**In re THERAGENICS CORP. SECURITIES LITIGATION.**

**No. Civ.A. 1:99CV141TWT.**

United States District Court, N.D. Georgia, Atlanta Division.

July 20, 2000.

Martin D. Chitwood, John O'Shea Sullivan, Chitwood & Harley, Atlanta, GA, Steven G. Schulman, Salvatore J. Graziano, Samuel H. Rudman, Keith M. Fleischman, Milberg Weiss Bershad Hynes & Lerach, New York City, Jeffrey R. Krinsk, Finkelstein & Krinsk, San Diego, CA, for MCV Sales Inc. Profit Sharing Plan & Trust, Peter Corey, Herbert Garbutt, Robert Hudson, James J. Holten, W.H. Thread, Jr., plaintiffs.

Leonard Barrack, Barrack Rodos & Bacine, Philadelphia, PA, Martin D. Chitwood, John O'Shea Sullivan, Chitwood & Harley, Atlanta, GA, Salvatore J. Graziano, Keith M. Fleischman, Milberg Weiss Bershad Hynes & Lerach, New York City, Jeffrey R. Krinsk, Finkelstein & Krinsk,

San Diego, CA, for Daniel Kursman, plaintiff.

Martin D. Chitwood, John O'Shea Sullivan, Chitwood & Harley, Atlanta, GA, Salvatore J. Graziano, Keith M. Fleischman, Milberg Weiss Bershad Hynes & Lerach, New York City, Jeffrey R. Krinsk, Finkelstein & Krinsk, San Diego, CA, Zachary Alan Starr, Starr & Holman, New York City, for Robert L. Thomas, Jr., plaintiff.

Fred Taylor Isquith, Shane T. Rowley, Wolf Haldenstein Adler Freeman & Herz, New York City, Martin D. Chitwood, John O'Shea Sullivan, Chitwood & Harley, Atlanta, GA, Salvatore J. Graziano, Keith M. Fleischman, Milberg Weiss Bershad Hynes & Lerach, New York City, Jeffrey R. Krinsk, Finkelstein & Krinsk, San Diego, CA, for Sidney Fielden, plaintiff.

Martin D. Chitwood, John O'Shea Sullivan, Chitwood & Harley, Atlanta, GA, Salvatore J. Graziano, Keith M. Fleischman, Milberg Weiss Bershad Hynes & Lerach, New York City, Jeffrey R. Krinsk, Finkelstein & Krinsk, San Diego, CA, Robert I. Harwood, Jeffrey M. Haber, Frederick W. Gerkens, Wechsler Harwood Halebian & Feffer, New York City, for Bruce B. Bernstein, plaintiff.

Marc H. Edelson, Hoffman & Edelson, Doylestown, PA, Joshua N. Rubin, Abbey Gardy & Squitieri, New York City, Martin D. Chitwood, John O'Shea Sullivan, Chitwood & Harley, Atlanta, GA, Salvatore J. Graziano, Keith M. Fleischman, Milberg Weiss Bershad Hynes & Lerach, New York City, Jeffrey R. Krinsk, Finkelstein & Krinsk, San Diego, CA, Paul J. Scarlato, Robert S. Kitchenoff, Weinstein Kitchenoff Scarlato & Goldman, Philadelphia, PA, Bruce G. Murphy, Law Offices of Bruce G. Murphy, Vero Beach, FL, for Geraldine Byers, Howard B. Marks, Alexander T. Kowalski, plaintiffs.

Marc H. Edelson, Hoffman & Edelson, Doylestown, PA, Martin D. Chitwood, John O'Shea Sullivan, Chitwood & Harley, Atlanta, GA, Salvatore J. Graziano, Keith M. Fleischman, Milberg Weiss Bershad Hynes & Lerach, New York City, Jeffrey R. Krinsk, Finkelstein & Krinsk, San Die-go, CA, Paul J. Scarlato, Robert S. Kitchenoff, Weinstein Kitchenoff Scarlato & Goldman, Philadelphia, PA, Dennis J. Johnson, Jacob B. Perkinson, Law Offices of Dennis J. Johnson, South Burlington, VT, for Jerry Jensen, Sara Cheeseman, plaintiffs.

Marc H. Edelson, Hoffman & Edelson, Doylestown, PA, Martin D. Chitwood, John O'Shea Sullivan, Chitwood & Harley, Atlanta, GA, Salvatore J. Graziano, Keith M. Fleischman, Milberg Weiss Bershad Hynes & Lerach, New York City, Jeffrey R. Krinsk, Finkelstein & Krinsk, San Diego, CA, Jacqueline Sailer, Brian P. Murray, Rabin & Peckel, New York City, Paul J. Scarlato, Robert S. Kitchenoff, Weinstein Kitchenoff Scarlato & Goldman, Philadelphia, PA, for Joseph S. Butler, plaintiff.

Michael R. Smith, Martin Robert Thornton, Letitia M. Brown, Dan Shamus McDevitt, King & Spalding, Atlanta, GA, for defendants.

## ORDER

THRASH, District Judge.

This is a private securities fraud class action brought by shareholders of Theragenics Corporation against the corporation and two of its officers. It is before the Court on Defendants' Motion to Dismiss [Doc. 15]. For the reasons set forth below, the Court grants Defendants' Motion to Dismiss.

## I. BACKGROUND

Plaintiffs are members of a potential class of purchasers of Theragenics Corporation common stock during the period January 29, 1998, to January 11, 1999. Defendant Theragenics Corporation is a Delaware corporation with its headquarters in Norcross, Georgia. It is engaged in the business of producing and selling radioactive seed implants to treat prostate cancer. Defendant Christine Jacobs is President, Chief Executive Officer and Chairperson of Theragenics. Defendant

Bruce Smith serves as Chief Financial Officer, Treasurer and Secretary of the company. Both individuals held their respective positions at all times material to the claims Plaintiffs set forth in their Amended Complaint.

Theragenics manufactures Palladium–103, also known as TheraSeed®. A competitor, Amersham Healthcare, is the primary supplier of Iodine–125, a similar product used to treat prostate cancer. For both products, medical professionals implant into the prostate between 40 and 100 rice-size radioactive seeds that emit radiation to destroy prostate cancer tumors. Iodine–125 seed implants began to be used to treat prostate cancer in the 1970's, but this treatment of prostate cancer was largely abandoned because of unsatisfactory results. By the late 1980's, however, new technology led to a resurgence in Iodine–125 seed treatment for prostate cancer. Thereafter, Theragenics entered the field with its own Palladium–103 TheraSeed®, which it previously had developed to treat other types of tumors. Theragenics's success in the field of prostate cancer treatment was tempered by the fact that TheraSeed®'s short half-life makes it less desirable than Iodine–125 for treating slow-growing prostate cancer. For this reason, according to the Amended Complaint, Iodine–125 has remained the preferred radioactive seed to treat prostate cancer.

In an attempt to bolster its earnings, on May 31, 1997, Theragenics granted Indigo Medical, Inc., a subsidiary of Johnson & Johnson Development Corporation, the exclusive worldwide right to market and sell TheraSeed®. This agreement with Indigo purportedly enabled Theragenics to focus solely on manufacturing instead of developing and maintaining its own sales force. By 1998, substantially all of Theragenics' sales occurred through Indigo. In early 1998, competitor Amersham began to encounter severe manufacturing shortages of Iodine–125. The waiting period for doctors who requested Iodine–125 increased from one month near the end of 1997 to more than four months by January 1998.

This backlog became so great that in May 1998 Amersham notified its customers that it could not accept any new orders for Iodine–125 until further notice. As a result of this Iodine–125 shortage, doctors substituted TheraSeed® in their implant procedures, and Theragenics revenues consequently increased. Theragenics became concerned that this increased demand—when coupled with Indigo's aggressive marketing efforts—could result in shortages of TheraSeed®, thus placing the company in the same position as Amersham. For that reason, Theragenics asked Indigo to reduce temporarily its TheraSeed® marketing efforts.

During the period that TheraSeed® enjoyed strong sales, allegedly because of Amersham's Iodine–125 shortage, Theragenics, in its public statements, said that doctors and patients increasingly considered TheraSeed® the prostate cancer treatment of choice, and that Indigo's marketing efforts were contributing to the acceleration in sales. Theragenics did not include cautionary statements that the increased sales were affected by Amersham's Iodine–125 shortage, nor did it notify investors that it had asked Indigo to curb its sales efforts.

By August, 1998, Amersham had remedied the Iodine–125 shortage, and doctors thereafter returned to Iodine–125 as their primary radioactive seed for treating prostate cancer. As a result, Theragenics's fourth quarter 1998 earnings were below its earnings in previous quarters. In announcing its disappointing fourth quarter results, Theragenics did not disclose to investors that its decreased earnings resulted in any way from the renewed availability of Amersham's preferred Iodine–125 seeds or that it had directed Indigo to curb sales efforts. Instead, Theragenics blamed the earnings decrease on Indigo's inexperience in marketing the product. Theragenics's share price dropped 33.8% in one day, from $15.3125 to $10.125.

Plaintiffs have filed this suit alleging that Defendants knew or recklessly disre-

garded knowledge that the increase in Theragenics revenues in the first three quarters of 1998 resulted directly from Iodine–125 shortages, and that revenues would decline once Iodine–125 became readily available again. Furthermore, Plaintiffs allege that Defendants falsely attributed the early 1998 increase in revenues to both increased acceptance of TheraSeed® and Indigo's marketing efforts, which Theragenics actually had curtailed. According to Plaintiffs, these allegedly false statements and omissions inflated the value of Theragenics stock in violation of the Securities Exchange Act of 1934 and injured Plaintiffs as purchasers of Theragenics stock at the artificially inflated prices. Defendants have moved to dismiss the case in its entirety for failure to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6). Defendants contend that the Amended Complaint fails to comply with the heightened pleading standards of Fed.R.Civ.P. 9(b) and the Private Securities Litigation Reform Act of 1995, Pub.L. No. 104–67, 109 Stat. 743 (1995) (codified at 15 U.S.C. § 78u–4(b)).

## II. MOTION TO DISMISS STANDARD

In general, a complaint should be dismissed under Rule 12(b)(6) only where it appears beyond doubt that no set of facts could support the plaintiff's claims for relief. Fed.R.Civ.P. 12(b)(6); *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Linder v. Portocarrero*, 963 F.2d 332, 334 (11th Cir.1992). In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff. *Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 994–95 (11th Cir.1983). Notice pleading is all that is required for a valid complaint. *Lombard's, Inc. v. Prince Mfg., Inc.*, 753 F.2d 974, 975 (11th Cir.1985). Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. *Id.*

## III. DISCUSSION

Section 10(b) of the Securities Exchange Act of 1934 [hereinafter "Section 10(b)"] prohibits any person from using, in connection with the sale of any security, any deceptive device in contravention of such rules and regulations as the Securities and Exchange Commission ("SEC") may prescribe. 15 U.S.C. § 78j(b). Based on this statute, the SEC has promulgated 17 C.F.R. § 240.10b–5 [hereinafter "Rule 10b–5"] to prohibit the making of any untrue statement or omission of material fact that would render statements misleading in connection with the purchase or sale of any security. To state a securities fraud claim under Rule 10b–5, a plaintiff must allege that the defendant (a) made a misstatement or omission, (b) of material fact, (c) with scienter, (d) in connection with the purchase or sale of securities, (e) upon which the plaintiff relied, (f) that proximately caused the plaintiff's injury. *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1281 (11th Cir.1999); *Robbins v. Koger Properties, Inc.*, 116 F.3d 1441, 1447 (11th Cir.1997); *Bruschi v. Brown*, 876 F.2d 1526, 1528 (11th Cir.1989); *Sturm v. Marriott Marquis Corp.*, 26 F.Supp.2d 1358, 1364–65 (N.D.Ga.1998).

Defendants contend that the Court should dismiss Plaintiffs' suit because: (1) Plaintiffs have failed to plead fraud with sufficient particularity; (2) Plaintiffs have failed to allege with particularity the facts that support their "information and belief" allegations; (3) Plaintiffs may not rely on the group pleading doctrine; (4) the alleged omissions on which Plaintiffs relied are protected forward-looking statements or are otherwise immaterial as a matter of law; (5) Plaintiffs have failed to allege facts that would establish a strong inference that Defendants acted with scienter; and (6) Plaintiffs have failed to allege adequately that Defendants Jacobs and Smith are subject to "controlling person" liability.

■ In considering whether Plaintiffs have pled their case adequately to withstand Defendants' Motion to Dismiss, this Court may consider evidence outside the pleadings that is undisputedly authentic and on which Plaintiffs specifically have relied in their Amended Complaint. *Harris v. Ivax Corp.*, 182 F.3d 799, 802 n. 2 (11th Cir.1999); *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir.1997). Additionally, the Eleventh Circuit recently ruled that district courts may judicially notice at the motion to dismiss stage any relevant documents legally required by and publicly filed with the SEC. *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1280 (11th Cir.1999). In *Bryant,* the Eleventh Circuit noted the line of cases where courts have allowed authentic documents, whether or not filed with the SEC, to be considered on a motion to dismiss if they are referred to in the plaintiff's complaint and are central, or integral, to the plaintiff's claim. *Bryant,* 187 F.3d at 1281, n. 16. *Accord Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 546 n. 9 (8th Cir.1997); *In re Donald J. Trump Casino Sec. Litig.–Taj Mahal Litig.*, 7 F.3d 357, 368 n. 9 (3d Cir.1993). This is sometimes referred to as the "incorporation by reference doctrine." *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir.1999). Plaintiffs in their Amended Complaint place great emphasis on earnings reports, newspaper articles, press releases and conference calls with financial analysts. Defendants' Motion to Dismiss includes exhibits of those items on which Plaintiffs rely in their Amended Complaint plus other documents filed with the SEC in the relevant period. To the extent the exhibits included in Defendants' Motion to Dismiss meet the above requirements, the Court considers them in rendering its decision. *Sturm v. Marriott Marquis Corp.*, 85 F.Supp.2d 1356, 1365–66 (N.D.Ga.2000). To do otherwise would be inconsistent with the Court's gatekeeping role with respect to private securities class actions. *Id.,* at 1366.

### A. False Statements or Omissions

Defendants contend that Plaintiffs have failed to adequately plead the existence of false statements or omissions, as required by Fed.R.Civ.P. 9(b) and the Private Securities Litigation Reform Act of 1995 [hereinafter "the Reform Act"], Pub.L. No. 104–67, 109 Stat. 743 (1995) (codified at 15 U.S.C. § 78u–4(b)).

#### 1. Fed.R.Civ.P. 9(b) and the Reform Act's Requirements for Pleading Fraud with Particularity

■ Defendants first contend that Plaintiffs have failed to plead fraud with sufficient particularity to satisfy Fed.R.Civ.P. 9(b) and the Reform Act. Complaints that allege fraud must meet the heightened pleading standards of Rule 9(b), which requires that "in all averments of fraud or mistake the circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b). A complaint satisfies Rule 9(b) if it sets forth precisely what statements or omissions were made in what documents or oral representations, who made the statements, the time and place of the statements, the content of the statements and manner in which they misled the plaintiff, and what benefit the defendant gained as a consequence of the fraud. *Brooks v. Blue Cross and Blue Shield of Fl.*, 116 F.3d 1364, 1371 (11th Cir.1997). In short, a plaintiff's complaint must state the "who, what, when, where, and how: the first paragraph of any newspaper story." *Gross v. Medaphis Corp.*, 977 F.Supp. 1463, 1470 (N.D.Ga. 1997) (quoting *DiLeo v. Ernst & Young,* 901 F.2d 624, 627 (7th Cir.1990)). The Reform Act has added the additional requirements that a plaintiff must "specify each statement alleged to have been misleading" and "the reason or reasons why the statement is misleading." 15 U.S.C. § 78u–4(b)(1).

The policy underlying the requirements of Rule 9(b) and the Reform Act is to provide a defendant notice of the particular misconduct alleged to be fraudulent so that he can defend against the charge and

not merely deny that he has done anything wrong. *Brooks*, 116 F.3d at 1370; *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1252 (10th Cir.1997); *Brady v. Anderson*, 1998 U.S.Dist. LEXIS 20774, at *8 (C.D.Cal. May 27, 1998). Furthermore, these requirements protect defendants from unfounded harm to their reputations and goodwill, reduce the number of strike suits and "in terrorem" settlements, and prevent plaintiffs from filing suit and then using discovery as a "fishing expedition" in the hope of finding something that will support their claims. *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 549 (8th Cir.1997); *Brooks*, 116 F.3d at 1371; *Vicom v. Harbridge Merchant Servs., Inc.*, 20 F.3d 771, 777 (7th Cir.1994); *Abrams v. Prudential Sec., Inc.*, 2000 WL 390494, at *5 (N.D.Ill. Mar. 21, 2000); *McNamara v. Bre–X Minerals Ltd.*, 57 F.Supp.2d 396, 404 (E.D.Tex. 1999).

■ In this case, Plaintiffs have identified ten statements that they contend were false or misleading:

(1) A January, 1998, statement that new cyclotrons would "supply anticipated increases in TheraSeed® demand generated by ... Indigo Medical" and that "[t]he acceptance of the Company's non-invasive treatment for prostate cancer by the public and the medical community has been outstanding." (Pls.' Am.Compl. ¶ 30; Defs.' Mot. to Dismiss Pls.' Consolidated Am. Compl., Ex. 5).

(2) A February, 1998, statement that "[i]n urology and prostate cancer treatment, there has never been a presence with a marketing prowess like Johnson & Johnson." (Pls.' Am.Compl. ¶ 31; Defs.' Mot. to Dismiss Pls.' Consolidated Am. Compl., Ex. 6).

(3) A statement in Theragenics' 1997 10–K that management "believe[d]" that TheraSeed® enjoyed a competitive advantage over Iodine–125 seeds. (Pls.' Am. Compl. ¶ 32; Defs.' Mot. to Dismiss Pls.' Consolidated Am.Compl., Ex. 1 at 15).

(4) An April, 1998, Company press release announcing record first quarter revenues and earnings and stating, "[a]ccep-

tance of TheraSeed® as a treatment of choice for prostate cancer by both doctors and patients continues to escalate." (Pls.' Am.Compl. ¶ 33; Defs.' Mot. to Dismiss Pls.' Consolidated Am.Compl., Ex. 7.).

(5) A statement in Theragenics' 10–Q for the first quarter of 1998 that: "Marketing efforts along with increased awareness of prostate cancer treatment options have contributed to the continued sales acceleration." (Pls.' Am.Compl. ¶ 34; Defs.' Mot. to Dismiss Pls.' Consolidated Am.Compl., Ex. 8 at 9.)

(6) A June, 1998, Company press release that stated: "Receiving our CE Mark and shipping our first order to Europe is another step forward in the evolution of Theragenics. This is just one example of why the Company's agreement with Indigo is so powerful." (Pls.' Am. Compl. ¶ 35; Defs.' Mot. to Dismiss Pls.' Consolidated Am.Compl., Ex. 9.)

(7) A July, 1998, Company press release announcing record second quarter revenues and stating that the Company's expanded manufacturing capacity would allow it to "meet the continued demand for TheraSeed®." (Pls.' Am.Compl. ¶ 37; Defs.' Mot. to Dismiss Pls.' Consolidated Am.Compl., Ex. 10.)

(8) A statement from Theragenics' 10–Q for the second quarter of 1998 that the Company's increased revenues were attributable to increased production volume and "increased patient awareness of TheraSeed® procedure." (Pls.' Am.Compl. ¶ 38; Defs.' Mot. to Dismiss Pls.' Consolidated Am.Compl., Ex. 11 at 11.)

(9) An October, 1998, Company press release announcing record revenues for the third quarter of 1998 and stating that the Company's increased manufacturing capacity would "allow [Theragenics] to offer more cancer patients the opportunity to take advantage of the TheraSeed® treatment." (Pls.' Am.Compl. ¶ 39; Defs.' Mot. to Dismiss Pls.' Consolidated Am. Compl., Ex. 12.)

(10) The Company's January 11, 1999, press release regarding its disappointing fourth quarter 1998 earnings and a conference call Defendants Jacobs and Smith held later that day with securities analysts. In both the press release and the conference call, Theragenics blamed the disappointing earnings on misallocation of resources by Indigo and stated that Indigo was adjusting its marketing and sales focus. (Pls.' Am.Compl. ¶¶ 41, 43; Defs.' Mot. to Dismiss Pls.' Consolidated Am. Compl., Exs. 4, 5.)

Plaintiffs have satisfied the requirements of Rule 9(b) for each of these alleged false or misleading statements. All these statements are contained in either documents filed with the Securities and Exchange Commission, press releases, or references to conference calls with securities analysts. As shown above, Plaintiffs have set forth precisely what statement or omission was made, in what document or oral representation it was made, who made the statement, the time and place of the statement, and the content of the statement. Indeed, Plaintiffs satisfied these requirements sufficiently that Defendants knew precisely which specific documents to include as exhibits to their Motion to Dismiss. Plaintiffs have alleged that they were misled by these statements and were enticed into purchasing Theragenics common stock in reliance on representations that TheraSeed® was receiving increased acceptance compared with Iodine–125 and that Indigo's marketing efforts were bolstering the product's growth. (Pls.Am.Compl.¶ 47.) Thus, Plaintiffs have stated the manner in which the Defendants misled the Plaintiffs and have identified the benefit Defendants gained as a consequence of the alleged fraud.

Plaintiffs also have satisfied the additional particularity requirements of the Reform Act: (1) specification of each statement alleged to have been misleading and (2) the reason or reasons why each statement is misleading. As set forth above, Plaintiffs have enumerated the ten specific statements that they allege to have been misleading. Plaintiffs also have stated the reasons why each statement is misleading. Plaintiffs state in detail that each of the ten statements was misleading because TheraSeed®'s earnings growth during the class period resulted from temporary shortages a competitor was suffering, not increased acceptance of TheraSeed® compared with the competitor's product. (Pls.Am.Compl.¶ 21–24.) Additionally, Plaintiffs allege that these statements were misleading because Defendants failed to disclose that they had directed Indigo to curtail its marketing efforts. (Pls.Am.Compl.¶ 25–28.) For these reasons, this Court concludes that Plaintiffs have satisfied the general particularity requirements of Rule 9(b) and the Reform Act for these ten particular statements.

### 2. The Reform Act's Requirements for Pleading Based on "Information and Belief"

■ The Reform Act imposes an additional hurdle for plaintiffs in private securities class action cases. The Reform Act requires that allegations regarding false statements or omissions that are made on information and belief must "state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u–4(b)(1). Defendants argue that Plaintiffs have failed to satisfy this heightened pleading standard regarding Plaintiffs' allegations that the 1998 revenue increases were temporary and that Defendants directed Indigo to curtail its sales efforts. According to Defendants, these allegations are based only on Plaintiffs' information and belief. Plaintiffs respond that the allegations are not based upon information and belief, but rather are based upon the investigation of counsel. Defendants counter that there exist only two types of allegations—those based on personal knowledge and those not based on such knowledge; and that all allegations not based on personal knowledge necessarily must be based on information and belief.

A number of courts interpreting the Reform Act have agreed with Defendants'

argument. *See, e.g., In re Equimed, Inc. Sec. Litig.,* [Current Developments], 2000 WL 562909, Fed.Sec.L.Rep. (CCH) ¶ 90,-975 at 94,324 (E.D.Pa. May 9, 2000) ("To distinguish between 'information and belief' and 'investigation of counsel' is meaningless; it would permit evasion of the clear intent of the statutory mandate."); *In re Green Tree Fin. Corp. Stock Litig.,* 61 F.Supp.2d 860, 872 (D.Minn.1999) (disagreeing with distinction between information and belief and investigation of counsel); *Brady v. Anderson,* 1998 U.S.Dist. LEXIS 20774, at *11–12 (C.D.Cal. May 27, 1998) (C.D.Cal.1998) (refusing to consider investigation of counsel as distinct from information and belief); *Lirette v. Shiva Corp.,* 999 F.Supp. 164, 165 (D.Mass.1998) (equating investigation of counsel with information and belief); *In re Silicon Graphics, Inc. Sec. Litig.,* 970 F.Supp. 746, 763 (N.D.Cal.1997) ("Because the sources ... do not provide plaintiffs with personal knowledge, the complaint must be based on information and belief—that is the only alternative."), *aff'd,* 183 F.3d 970, 991 (9th Cir.1999).

Plaintiffs respond that a distinction does exist so that the factual basis requirement for information and belief allegations does not apply to allegations based on the investigation of counsel. Some courts have agreed with this view. *See, e.g., Lister v. Oakley,* [1999 Transfer Binder], 1999 WL 816928, Fed.Sec.L.Rep. (CCH) ¶ 90,410 at 91,851 (C.D.Cal. Jan. 14, 1999) ("Because Plaintiffs' Complaint is based on the investigation of counsel, they need not state with particularity all facts on which their beliefs are formed."); *In re Employer Solutions Sec. Litig.,* [1998 Transfer Binder], 1998 WL 1031506 Fed.Sec.L.Rep. (CCH) ¶ 90,293 at 91,368 (D.Ariz. Sept. 22, 1998) (allowing claim based on counsels' investigation to proceed); *Warman v. Overland Data, Inc.,* [1998 Transfer Binder], 1998 WL 110018 Fed.Sec.L.Rep. (CCH) ¶ 90,167 at 90,529 (S.D.Cal. Feb. 20, 1998) (stating that "because plaintiffs have pled their allegations based on the investigation of the attorney and not upon information and belief, the complaint need not state with

particularity all the facts on which the belief is formed"); *Zeid v. Kimberley,* 973 F.Supp. 910, 915 (N.D.Cal.1997) (holding that complaint based on investigation of counsel does not need to state with particularity facts on which the belief are formed).

The Court has reviewed the cases on point and agrees with those that hold that allegations based on the investigation of counsel are the equivalent of allegations based on information and belief. For this Court to rule otherwise would elevate form over substance and allow plaintiffs to avoid the Reform Act's mandate merely by cloaking with a license to practice law the information and belief on which a complaint is based. Rule 11 of the Federal Rules of Civil Procedure provides that, by presenting a pleading, motion, or other paper to a court, an attorney is certifying that he has conducted "an inquiry reasonable under the circumstances." Fed. R.Civ.P. 11(b). Prior to the Reform Act, Rule 11 required that an attorney in every case must investigate claims before filing a complaint. Congress, rightly or wrongly, decided that the protection of Rule 11 against frivolous lawsuits was not enough. The Court must conclude that a bare recitation that the Complaint is based upon the investigation of counsel does not satisfy the pleading requirements of the Reform Act. Plaintiffs' Amended Complaint, therefore, is deemed to be based on information and belief and must comply with the Reform Act's requirements for that manner of pleading.

As stated above, the Reform Act provides that "if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u–4(b)(1). Courts implementing the Reform Act, however, have differed in their interpretations of what constitutes sufficient factual support. This conflict among the federal courts has arisen in large part because of differing interpretations of the Reform

Act's legislative history. Because the Eleventh Circuit has not provided its interpretation of what constitutes sufficient factual support to satisfy the information and belief pleading requirement, this Court has reviewed extensively other federal courts' interpretations of information and belief pleading as it existed pursuant to Fed. R.Civ.P. 9(b) prior to the Reform Act's enactment, the legislative history of the Reform Act, and other federal courts' interpretations of the Reform Act's information and belief pleading requirements.

Until the enactment of the Reform Act, plaintiffs filing securities fraud lawsuits needed only to satisfy the particularity requirements of Rule 9(b) in their complaints. As discussed above in depth, Rule 9(b) states: "In all averments of fraud or mistake, the circumstances constituting fraud shall be stated with particularity." Fed.R.Civ.P. 9(b). For allegations based on information and belief, many courts required plaintiffs to state the facts upon which their beliefs were formed. *E.g., Tuchman v. DSC Communications Corp.,* 14 F.3d 1061, 1068 (5th Cir.1994); *Neubronner v. Milken,* 6 F.3d 666, 672 (9th Cir.1993); *Uni\*Quality, Inc. v. Infotronx, Inc.,* 974 F.2d 918, 923–24 (7th Cir.1992); *Stern v. General Elec. Co.,* 924 F.2d 472, 477 (2d Cir.1991); *Elster v. Alexander,* 75 F.R.D. 458, 461 (N.D.Ga.1977). *See generally* 5 Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1298 & nn. 31–32 (2d ed. 1990) ("Allegations based on information and belief usually do not satisfy the particularity requirement, unless accompanied by a statement of the facts upon which the belief is founded, but the rule may be relaxed as to matters peculiarly within the opposing party's knowledge."). To satisfy this Rule 9(b) requirement in federal securities cases, plaintiffs before passage of the Reform Act were, in some cases, required to state the sources of their information and the reasons upon which their beliefs were founded. *E.g., Parnes v. Gateway 2000, Inc.,* 122 F.3d 539, 550 (8th Cir.1997): *Romani v. Shearson Lehman Hutton,* 929 F.2d 875, 878 (1st Cir.1991); *Riley v. Bra-*

*zeau,* 612 F.Supp. 674, 677 (D.Or.1985); *Bruns v. Ledbetter,* 583 F.Supp. 1050, 1052 (S.D.Cal.1984); *Goldberg v. Meridor,* 81 F.R.D. 105, 111 (S.D.N.Y.1979).

It was amid this already detailed pleading standard that Congress enacted the Reform Act. Much has been written about how the Reform Act was enacted because Congress believed that Rule 9(b) was not protecting defendants adequately from unfounded securities fraud lawsuits. *See generally* Symposium, *The Implications of the Private Securities Reform Act,* 76 Wash.U.L.Q. 447 (1998) (reviewing enactment of Reform Act and its implications for securities fraud lawsuits); Richard M. Phillips and Gilbert C. Miller, *The Private Securities Litigation Reform Act of 1995: Rebalancing Litigation Risks and Rewards for Class Action Plaintiffs, Defendants and Lawyers,* 51 Bus.Law. 1009, 1009 (1996) ("The Reform Act came into being because sizeable bipartisan majorities of both houses of Congress became persuaded that the private securities litigation system was seriously out of balance."). Indeed, Congress itself in its Conference Report stated its frustration quite unambiguously:

> Rule 9(b) of the Federal Rules of Civil Procedure requires that plaintiffs plead allegations of fraud with 'particularity.' The Rule has not prevented abuse of the securities laws by private litigants. Moreover, the courts of appeal have interpreted Rule 9(b)'s requirement in conflicting ways, creating distinctly different standards among the circuits. The House and Senate hearing on securities litigation reform included testimony on the need to establish uniform and more stringent pleading requirements to curtail the filing of meritless lawsuits.

Joint Explanatory Statement of the Committee of Conference, Pub.L. No. 104–67, 109 Stat. 743 (1995), at 41, *reprinted in* 1995 U.S.C.C.A.N. 679, 740 (citations omitted). The great discrepancy in standards between the circuits to which Congress was alluding, however, was not how to

treat information and belief allegations, but rather what is required to plead scienter sufficiently. Furthermore, most of the language on pleading with particularity that followed in the Conference Report centered on motive, opportunity, and recklessness, although not deciding their applicability). In one sentence in this same part of the Conference Report, Congress did discuss information and belief pleading, but stated only: "If an allegation is made on information and belief, the plaintiff must state with particularity all facts in the plaintiff's possession on which the belief is formed." *Id.* This sentence, in effect, did no more than practically quote the language of the statute itself.

The only other legislative history regarding information and belief allegations comes from consideration of an amendment to H.R.1058, the House of Representatives' version of the Reform Act, proposed by Congressman John Bryant, D–TX. Congressman Bryant expressed his concern that the information and belief provision as written would require plaintiffs to provide "with specificity all information" on which they base their complaint, including whistle-blowers. 141 Cong.Rec. H2848 (Mar. 8, 1995). Congressman John Dingell, D–MI, ranking minority member of the House Commerce Committee, agreed and stated that H.R. 1058, if passed without the Bryant Amendment, would require plaintiffs "literally, in your pleadings, [to] include the names of confidential informants, employees, competitors, and others who have provided information leading to the filing of the case." 141 Cong.Rec. H2849 (Mar. 8, 1995). Despite these concerns voiced by Congressmen Bryant and Dingell, Congress rejected the Bryant Amendment.

At least one court, the Northern District of California in *In re Silicon Graphics, Inc. Securities Litigation,* 970 F.Supp. 746, 763–64 (N.D.Cal.1997), *aff'd,* 183 F.3d 970, 983–84 (9th Cir.1999), placed great emphasis on the fact that Congressmen Bryant and Dingell voiced these concerns, but the Bryant Amendment nevertheless failed. The court drew the conclusion

from the debate that the Reform Act requires plaintiffs to disclose all sources of information, including, for example, the names of confidential informants. *Id.,* at 763–64. Recently, however, some courts and commentators have criticized the *Silicon Graphics* court's interpretation of this legislative history. *See, e.g., Novak v. Kasaks,* 216 F.3d 300, 313 (2d Cir.2000) ("[T]his rule is based on a misreading of the legislative history of the PSLRA. Specifically, the court in *Silicon Graphics* relied primarily on the hyperbolic statements of legislators attempting (unsuccessfully) to amend the proposed Act to lighten plaintiffs' pleading burden."); *Securities Reform Act Does Not Require Plaintiff to Name Sources,* E.D.Pa.Rules, 4 No. 16 Andrews Sec.Litig. & Reg.Rep. 8 (April 28, 1999) (reviewing *In re Aetna* and stating that Congress was not attempting to heighten the information and belief pleading standard). At least one commentator, in his securities law treatise, has devoted an entire section to the *Silicon Graphics* court's interpretation of the legislative history and has concluded that the analysis is flawed. Harold S. Bloomenthal, *Securities and Federal Corporate Law* § 16.25.8 (1999). This commentator supports his conclusion by noting that the bill the House adopted, H.R.1058, was not the same bill that passed the entire Congress. H.R.1058 was amended in the House and Senate Conference Committee. *Id.* Furthermore, the Bryant Amendment did not simply change the information and belief language—more importantly, it would have lessened the standard for pleading scienter and would have eliminated the provision that stays discovery until after a court's resolution of a motion to dismiss. *Id.; see also* 141 Cong.Rec. H2850 (Mar. 8, 1995) (stating view of Congressman Christopher Cox, R–CA: "Ironically the amendment is completely inconsistent with Federal Rule of Civil Procedure 9(b) because, while it requires that one plead fraud with particularity, the Bryant Amendment would let a costly lawsuit go ahead if the complaint only 'suggests that fraud may have oc-

curred.'"). In debate on the Bryant Amendment, there was only isolated reference to the information and belief language, and that isolated reference is what the *Silicon Graphics* court focused on when it ruled that plaintiffs in their complaints must provide very detailed facts, including the names of confidential informants. *Id.*

In the face of all this legislative ambiguity, the federal courts have grappled the last few years with exactly what changes, if any, to previous Rule 9(b) standards the Reform Act created for information and belief pleading. While this debate regarding information and belief has not received as much ink as the debate surrounding its more glamorous stepsister, the scienter requirement, it nevertheless exists and continues due to the ambiguity of the statutory language. Some courts have adopted the *Silicon Graphics* interpretation and have concluded that the Reform Act significantly raised the information and belief standard of Rule 9(b) so that a plaintiff in a securities fraud complaint must now provide extremely detailed documentary and testimonial evidence. *In re Green Tree Fin. Corp. Stock Litig.,* 61 F.Supp.2d 860, 872 (D.Minn.1999); *Novak v. Kasaks,* 997 F.Supp. 425, 431–32 (S.D.N.Y.1998), *vacated,* 216 F.3d 300, at 313 (2d Cir.2000); *Chan v. Orthologic Corp.,* 1998 WL 1018624, at *15–16 (D.Ariz. Feb.5, 1998); *In re Silicon Graphics, Inc. Sec. Litig.,* 970 F.Supp. 746, 763–64 (N.D.Cal.1997), *aff'd,* 183 F.3d 970, 983–84 (9th Cir.1999). The *Silicon Graphics* court even wrote that (1) allegations of the existence of negative internal reports should have included "the titles of the reports, when they were prepared, who prepared them, to whom they were directed, their content, and the sources from which the plaintiffs obtained this information" and (2) allegations acquired from other persons should have included names of confidential informants, employees, competitors, Government employees, and members of the media. *Silicon Graphics,* 970 F.Supp. at 763, 767.

Other courts, however, including the Second Circuit, have rejected the *Silicon Graphics* view. *See Novak,* 216 F.3d at 313 (stating that the Reform Act "does not require that plaintiffs plead with particularity every single fact upon which their beliefs concerning false or misleading statements are based"), *vacating,* 997 F.Supp. 425, at 431–32; *In re Aetna, Inc. Sec. Litig.,* MDL No. 1219 (E.D.Pa. Mar. 24, 1999) (stating that the Reform Act does not require plaintiffs to provide the names of human sources, especially where evidence exists that plaintiffs conducted extensive investigation), *aff'd,* No. 99–2019 (3d Cir. May 5, 1999); *In re First Merchants Acceptance Corp. Sec. Litig.,* 1998 WL 781118, at *7 n. 3 (N.D.Ill. Nov. 4, 1998) ("The complaint sets forth detailed allegations of fraud and alleges substantially more than 'rumor or hunch.' The fact that Plaintiffs do not have all of the specific documents to support their claims at this time is not fatal to their complaint." (citations omitted)); *In re Digi Int'l, Inc., Sec. Litig.,* 6 F.Supp.2d 1089, 1096–97 (D.Minn.1998) ("[T]he Court declines to adopt the view that the language of the Reform Act mandates that each and every 'information and belief' allegation must be supported by underlying documentary evidence."); *In re Cephalon Sec. Litig.,* [1997 Transfer Binder], 1997 WL 570918 Fed. Sec.L.Rep. ¶ 99,562 at 97,799 (E.D.Pa. Aug. 29, 1997) ("[The Reform Act] does not require pleading of all evidence and proof thereunder supporting a plaintiff's claim."). Some of these courts rejecting the *Silicon Graphics* view have concluded that the information and belief provision in the Reform Act merely codifies the Rule 9(b) requirement as it existed before the Reform Act's enactment. *See McNamara v. Bre–X Minerals Ltd.,* 57 F.Supp.2d 396, 405–06 (E.D.Tex.1999) (citing *Williams v. WMX Techs., Inc.,* 112 F.3d 175, 177–78 (5th Cir.1997)); *In re Digi Int'l, Inc. Sec. Litig.,* 6 F.Supp.2d 1089, 1095 n. 2 (D.Minn.1998) ("For the reasons set forth below, the Court finds that those allegations sufficient under Rule 9(b) are also sufficient under the Reform Act. Likewise, the Court concludes that the allegations

that fail to meet the pleading standards under the Reform Act are also inadequate under Rule 9(b)."); *cf. Hallwood Realty Partners, L.P. v. Gotham Partners, L.P.,* 95 F.Supp.2d 169, 178 (S.D.N.Y.2000) ("Under *long standing precedents* in this circuit and under the PSLRA, a plaintiff making such an allegation on information and belief must set forth the factual basis on which it rests.") (emphasis added); *Sabratek Corp. v. Keyser,* [Current Developments], 2000 WL 423529, Fed.Sec.L.Rep. (CCH) ¶ 90,949 at 94,119 (S.D.N.Y. April 19, 2000)(citing pre-Reform precedent that required "a statement of facts upon which pleaded information and beliefs are founded.")

■ After extensively reviewing the Reform Act, its legislative history, and more than 50 cases, this Court agrees with the approach of the Second Circuit in its recent *Novak* decision. The court held:

> In our view, notwithstanding the use of the word "all," paragraph (b)(1) does not require that plaintiffs plead with particularity every single fact upon which their beliefs concerning false or misleading statements are based. Rather, plaintiffs need only plead with particularity sufficient facts to support those beliefs. Accordingly, where plaintiffs rely on confidential personal sources but also on other facts, they need not name their sources as long as the latter facts provide an adequate basis for believing that the defendants' statements were false. Moreover, even if personal sources must be identified, there is no requirement that they be named, provided they are described in the complaint with sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged. In both of these situations, the plaintiffs will have pleaded enough facts to support their belief, even though some arguably relevant facts have been left out.

*Novak v. Kasaks,* 216 F.3d 300, 313 (2d Cir.2000). In practice, this pleading requirement may be easily satisfied by references to internal memoranda or other documents, press releases, news articles and government-mandated filings. A plaintiff at this stage of the litigation, however, need not provide the names of either corporate whistle-blowers, customers of the defendant, or even outside consultants who provided factual support for the allegations, provided that there are other facts that provide an adequate basis for believing that the defendants' statements were false. If there are no other sources of information, it is enough that the plaintiff cite human sources without providing their names, provided that enough information is given to assure the Court that the plaintiff is not seeking to use discovery merely as a fishing expedition in the hope that something will turn up.

The Court believes that this interpretation comports with both the legislative history of the Reform Act and the policies that underlie it. As this Court has stated previously, the Reform Act attempts to achieve a delicate balance between providing a remedy for genuine fraud while preventing abusive strike suits. *Carley Capital Group v. Deloitte & Touche, L.L.P.,* 27 F.Supp.2d 1324, 1339 (N.D.Ga.1998). There is no doubt that the Reform Act heightened the pleading standards for securities cases in an attempt to prevent abusive strike suits where plaintiffs bring cases in hopes of using the discovery process to uncover evidence of fraud not alleged in the complaint. *See e.g., Malin v. Ivax Corp.,* 17 F.Supp.2d 1345, 1352 (S.D.Fla.1998) (reviewing Reform Act's enactment). This Court believes, however, that if Congress had intended basically to abolish notice pleading that underlies the Federal Rules of Civil Procedure and instead reintroduce the previously rejected concept of code pleading in such an important area of federal law, Congress would have stated so more explicitly.

■ Having now determined what it concludes is the proper standard for information and belief pleading pursuant to the Reform Act, this Court now applies that

standard to the facts of this case. First, this Court notes that the first paragraph of Plaintiffs' Amended Complaint is not sufficient by itself to satisfy the standard. Plaintiffs state summarily in the first paragraph of their Amended Complaint that their allegations are based upon "personal knowledge as to themselves and their own acts and as to all other matters upon the investigation made by and through their attorneys and the facts set forth below. Plaintiffs believe that further substantial evidentiary support will exist for the allegations set forth below after reasonable opportunity for discovery." (Pls.' Am. Compl., at 1.) Those courts considering the issue, regardless of their other disagreements on information and belief pleading, unanimously agree that a prefatory statement of this type clearly does not satisfy the Reform Act's information and belief pleading requirements, even if the paragraph states the sources on which the attorneys' investigation was based, which Plaintiffs failed to do even in this introductory paragraph. *See, e.g., Feeney v. Mego Mortgage Corp.*, 45 F.Supp.2d 1356, 1357 (N.D.Ga.1999) (finding as insufficient general and undifferentiated assertions that allegations to follow are based on information and belief or investigation of counsel); *In re Aetna, Inc. Sec. Litig.*, 34 F.Supp.2d 935, 942 (E.D.Pa.1999) (similar paragraph provided "little, if any, specificity about the foundation for their attorneys' allegations"); *Brady v. Anderson*, 1998 U.S.Dist. LEXIS 20774, at *11, 20, 25–26, 32–33 (C.D.Cal. May 27, 1998) (dismissing complaint for failure to plead false statements adequately despite prefatory paragraph stating that complaint was based on SEC filings, securities analysts' reports and advisories, press releases, media reports, discussions with consultants, and even former officers and employees of the company); *In re Silicon Graphics, Inc. Sec. Litig.*, 970 F.Supp. 746, 763 (N.D.Cal.1997) (finding similar language insufficient), *aff'd*, 183 F.3d 970, 983–84 (9th Cir.1999).

To satisfy the Reform Act, some basis must be provided for each belief by the Plaintiffs that the Defendants' statements were false. *See Coates v. Heartland Wireless Communications, Inc.*, 26 F.Supp.2d 910, 917 (N.D.Tex.1998) (holding that general statement of basis for plaintiffs' allegations fails to satisfy Reform Act); *In re Health Management Sys., Inc. Sec. Litig.*, 1998 WL 283286, at *3 (S.D.N.Y. June 1, 1998) ("Even if plaintiffs have sufficiently identified the source of their allegations [in the introductory paragraph], they have failed to plead the elements of fraud with particularity. As discussed above, under the PSLRA, plaintiffs are required to specify each statement alleged to have been misleading, and the reasons why the statement is misleading."). Based on the above-cited case law, the introductory paragraph in Plaintiffs' Amended Complaint clearly does not satisfy the information and belief pleading standard.

Defendants contend that Plaintiffs failed to provide sufficient factual basis for their allegations that Amersham encountered severe manufacturing shortages and that these shortages were the only reason medical professionals were switching to TheraSeed®. This Court agrees. Plaintiffs must allege facts showing an adequate basis for this allegation. Did they learn it from doctors who switched from Iodine–125 to TheraSeed® because they were put on a waiting list for Iodine–125? Did they learn it from salespersons for Amersham or other medical supply companies? Did they learn it from patients whose doctors told them they were implanting with TheraSeed® because Iodine–125 was scarce? Did they read it in the newspaper articles or a securities filing made by Amersham? This type of factual support is required for Plaintiffs to withstand Defendants' Motion to Dismiss. *See e.g., Yourish v. California Amplifier*, 191 F.3d 983, 994 (9th Cir.1999) ("If such unsupported general claims were sufficient to satisfy Rule 9(b)'s particularity requirements, plaintiffs could eliminate the falsity requirement because they could merely identify a given statement by the defendants and then simply allege that the substance of the statement was contradicted by contemporaneous information con-

tained in internal reports."); *San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Co.*, 75 F.3d 801, 812–13 (2d Cir.1996) (requiring plaintiffs to plead undisclosed information with particularity pursuant to Rule 9(b)); *Ressler v. Liz Claiborne, Inc.*, 1999 WL 767459, at *4 (E.D.N.Y. Aug.14, 1999) (finding that plaintiffs failed to identify the source of their allegations of adverse circumstances and did not indicate how or when the company became aware of alleged undisclosed information). By requiring this factual support, the Court is not demanding information that they would not already possess if their allegation is legitimate. As Judge Moye recently observed: "If, as represented, plaintiffs or their counsel have made an adequate investigation prior to filing the complaint, there should be no difficulty in complying with the pleading requirements set forth above." *Feeney v. Mego Mortgage Corp.*, 45 F.Supp.2d 1356, 1358 (N.D.Ga.1999).

Defendants next contend that Plaintiffs have failed to provide any factual basis for their allegation that Theragenics ordered Indigo to curtail its sales efforts. The Court agrees. Plaintiffs' allegation merely states, "Defendants' response to this increased demand [caused by Amersham shortages] was to instruct Indigo to reduce its marketing efforts to avoid an over-demand situation." (Pls.' Am.Compl. ¶ 25.) Plaintiffs need to provide the Court with either the sources from which or whom they acquired this information, or the reasons why they believe the allegation is true.

This analysis by the Court comports with its rulings in three previous securities fraud cases brought before it, *In re Valu-Jet, Inc. Securities Litigation*, 984 F.Supp. 1472, 1477–78 (N.D.Ga.1997); *In re Miller Industries, Inc. Securities Litigation*, 12 F.Supp.2d 1323, 1328–30 (N.D.Ga.1998); and *Carley Capital Group v. Deloitte & Touche, L.L.P.*, 27 F.Supp.2d 1324, 1335 (N.D.Ga.1998). In *ValuJet*, one reason this Court found that the plaintiffs satisfied the Reform Act's pleading requirements was because Federal Aviation Administration ("FAA") documents, including a February 29, 1996, letter the FAA sent to ValuJet President Lewis Jordan, supported allegations that ValuJet's airplanes were inadequately maintained. *ValuJet*, 984 F.Supp. at 1477–78. The FAA letter constituted specific factual support on which the plaintiffs' allegations were based. *Miller Industries* and *Carley Capital* are somewhat different cases from *ValuJet* and the case presently before this Court because most of the claims in *Miller Industries* and *Carley Capital* were based on accounting fraud, not verbal and written statements from press releases, conference calls, speeches, and the like. *Carley Capital*, 27 F.Supp.2d at 1335; *Miller Indus.*, 12 F.Supp.2d at 1328. Nevertheless, the Court in both those cases found that the plaintiffs had provided specific factual support for their accounting fraud claims in the accounting reports themselves. *Carley Capital*, 27 F.Supp.2d at 1335; *Miller Indus.*, 12 F.Supp.2d at 1328. Additionally, the Court in *Miller Industries* dismissed the claims against individual defendant William Miller in part because the plaintiffs failed to include any factual support for their allegation that Miller, in a conference call with securities analysts, reported that "business was strong." *Miller Indus.*, 12 F.Supp.2d at 1330. Accordingly, the Defendant's Motion to Dismiss should be granted for this failure to comply with the Reform Act. Because the Court will allow leave to amend, it is necessary to address the remaining issues raised by Defendant's Motion to Dismiss.

### 3. The Reform Act's Effect on Group Pleading

■ Defendants next contend that Plaintiffs cannot rely on the group pleading doctrine. This Court, however, has previously held that the group pleading doctrine survived the enactment of the Reform Act. *In re Miller Indus., Inc. Sec. Litig.*, 12 F.Supp.2d 1323, 1329 (N.D.Ga. 1998); *In re ValuJet, Inc. Sec. Litig.*, 984 F.Supp. 1472, 1478 (N.D.Ga.1997). The

Eleventh Circuit has not ruled otherwise, and numerous other district courts have agreed with this Court's holding. *See, e.g., In re BankAmerica Corp. Sec. Litig.,* 78 F.Supp.2d 976, 987 (E.D.Mo.1999) ("Additionally, plaintiffs must attribute all misleading statements to particular defendants, in order to enlighten each defendant as to his or her part in the alleged fraud. This requirement can be met by the group pleading doctrine." (citations omitted.)); *In re Oxford Health Plans Sec. Litig.,* 187 F.R.D. 133, 142 (S.D.N.Y.1999) ("This Court agrees that the PSLRA has not altered the group pleading doctrine. . . ."); *In re Aetna, Inc. Sec. Litig.,* 34 F.Supp.2d 935, 949 (E.D.Pa.1999) (applying group pleading doctrine); *In re Digi Int'l, Inc. Sec. Litig.,* 6 F.Supp.2d 1089, 1101 (D.Minn.1998) ("Because the individual defendants are inside and controlling persons of [the Company] and allegedly acted together with regard to the various disclosures, the complaints need not draw a specific connection between these defendants and every alleged omission and misrepresentation."); *In re Stratosphere Corp. Sec. Litig.,* 1 F.Supp.2d 1096, 1108 (D.Nev.1998) ("[E]ven in *In re Silicon Graphics,* which established the most stringent of pleading standards under the PSLRA, the court did not question whether group pleading was still viable post-PSLRA."); *In re Grand Casinos, Inc. Sec. Litig.,* 988 F.Supp. 1273, 1282 n. 12 (D.Minn.1997) ("In addition, because the individual defendants are inside, controlling persons of [the companies] and allegedly acted together with regard to other disclosures, the Amended Complaint need not draw a specific connection between every alleged omission and misrepresentation and a particular defendant."); *Powers v. Eichen,* 977 F.Supp. 1031, 1040 (S.D.Cal. 1997) (applying group pleading doctrine); *Greene v. Horizon/CMS Healthcare Corp.,* 1998 U.S.Dist. LEXIS 12254, at *9–10 (D.N.M. July 13, 1998) ("Using [the group pleading standard], the Amended Complaint adequately identifies which Defendants, individually or collectively, made each statement thereby putting Defen-dants on notice sufficient to satisfy Rule 9(b)."); *In re Silicon Graphics, Inc. Sec. Litig.,* 970 F.Supp. 746, 759–60 (N.D.Cal. 1997) ("Under the group pleading doctrine, in drafting a complaint, plaintiffs may rely on a presumption that statements in 'prospectuses, registration statements, annual reports, press releases, or other "group-published information' " are the collective work of those individuals with direct involvement in the day-to-day affairs of the company."); *In re Health Management, Inc. Sec. Litig.,* 970 F.Supp. 192, 209 (E.D.N.Y.1997) (applying group pleading doctrine).

This Court is aware of only four cases— and two of them from the same district court—where the group pleading doctrine's continued viability has been rejected. *Branca v. Paymentech, Inc.,* [Current Developments], 2000 WL 145083 Fed.Sec. L.Rep. (CCH) ¶¶ 90, 911 at 93,853 (N.D.Tex. Feb. 8, 2000); *Marra v. Tele-Save Holdings, Inc.,* [1999 Transfer Binder], 1999 WL 317103 Fed.Sec.L.Rep. (CCH) ¶ 90,480 at 92,288–29 (E.D.Pa. May 18, 1999); *Coates v. Heartland Wireless Communications, Inc.,* 26 F.Supp.2d 910, 915–16 (N.D.Tex.1998); *Allison v. Brooktree Corp.,* 999 F.Supp. 1342, 1350–51 (S.D.Cal.1998). Defendants have not referred the Court to any others.

As policy support for its view that the group pleading doctrine survived the Reform Act's enactment, this Court notes that the group pleading doctrine is simply a rebuttable doctrine that the contents of company-published documents and press releases are attributable to officers and directors with inside knowledge of and involvement in the day-to-day affairs of a company. Because this doctrine raises only a rebuttable presumption and applies only to a limited class of people within a company, this Court cannot say that it is inconsistent with the Reform Act or that it was abolished by its enactment. *See In re BankAmerica Corp. Sec. Litig.,* 78 F.Supp.2d 976, 988 (E.D.Mo.1999) (upholding group pleading doctrine based on same policy).

### B. Materiality

Defendants also contend that the alleged omissions on which Plaintiffs relied are forward-looking statements protected by the Reform Act's safe harbor or are otherwise immaterial as a matter of law. A false statement or omission will be considered "material" if its disclosure would alter the total mix of facts available to an investor and "if there is a substantial likelihood that a reasonable shareholder would consider it important" to the investment decision. *Basic, Inc. v. Levinson,* 485 U.S. 224, 246–47, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988). Materiality is a mixed question of law and fact. *Goldman v. Belden,* 754 F.2d 1059, 1067 (2d Cir.1985). A complaint may not be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) unless the alleged misstatements and omissions are "so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance." *Id.*

The Reform Act does provide a safe harbor for statements identified as forward-looking statements accompanied by cautionary language. 15 U.S.C. § 78u–5(c)(1)(A)(i). Additionally, SEC Rule 3b–6 provides a safe harbor for forward-looking statements made in a quarterly or annual report if the statements were made with a "reasonable basis" and "in good faith." 17 C.F.R. § 240.3b–6. Finally, the judicially created "bespeaks caution" doctrine protects misstated forecasts, opinions, and projections if "meaningful cautionary statements" accompany the forward-looking statements. *Saltzberg v. TM Sterling/Austin Assoc.,* 45 F.3d 399, 400 (11th Cir.1995) (adopting the bespeaks caution doctrine as outlined in *In re Donald Trump Casino Sec. Litig.,* 7 F.3d 357, 371–73 (3d Cir.1993)).

Since the Court has found in this case that Plaintiffs have failed to provide sufficient evidence that Defendants made false or misleading statements or omissions, it does not address the materiality issue in detail. Nevertheless, if Plaintiffs had provided sufficient factual support for their allegations regarding Defendants' omissions that revenue increases were temporary and Indigo had curtailed sales efforts, this Court would not conclude as a matter of law that the alleged statements and omissions regarding Theragenics' revenues and earnings were clearly unimportant to the average investor. As for whether the statements were forward-looking or are protected by the bespeaks caution doctrine, the Court cannot hold at this stage of the litigation that no set of facts would support the Plaintiffs' claims for relief.

### C. Scienter

Defendants also contend that Plaintiffs have failed to satisfy the Reform Act's requirements for pleading scienter. A plaintiff must allege scienter properly to state a claim pursuant to Section 10(b) and Rule 10b–5. The Supreme Court has defined scienter as "a mental state embracing intent to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 194, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976). Before the enactment of the Reform Act, the law in the Eleventh Circuit was clear that there did not exist a special pleading standard for securities fraud cases and that "a showing of 'severe recklessness' satisfies the scienter requirement." *McDonald v. Alan Bush Brokerage Co.,* 863 F.2d 809, 814 (11th Cir.1989). The Eleventh Circuit defined "severe recklessness" as follows:

> Severe recklessness is limited to those highly unreasonable omissions or misrepresentations that involve not merely simple or even excusable negligence, but an extreme departure from the standards of ordinary care, and that present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it.

*Id.* (quoting *Broad v. Rockwell Int'l Corp.,* 642 F.2d 929, 961 (5th Cir.1981) (en banc)).

The Reform Act includes a provision that for each allegedly false statement or omission, a plaintiff must provide particu-

lar facts that create "a strong inference that the defendants acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2). The application of this provision has produced considerable debate as to whether the Reform Act's heightened pleading standards also raised the required level of scienter in securities fraud cases. *See e.g., In re Silicon Graphics, Inc. Sec. Litig.,* 183 F.3d 970, 975 (9th Cir.1999) (adopting stringent requirement that plaintiffs must allege facts that give rise to strong inference of deliberate recklessness), *aff'g,* 970 F.Supp. 746, 757 (N.D.Cal.1997); *In re Comshare, Inc. Sec. Litig.,* 183 F.3d 542, 549 (6th Cir.1999) (taking middle course by allowing plaintiffs to plead facts that give rise to a strong inference of recklessness, but rejecting that motive and opportunity alone are sufficient); *In re Advanta Corp. Sec. Litig.,* 180 F.3d 525, 534–35 (3d Cir.1999) (allowing plaintiffs to show motive or opportunity to commit fraud or circumstantial evidence that denotes either recklessness or conscious misbehavior); *Press v. Chemical Inv. Servs. Corp.,* 166 F.3d 529, 537–38 (2d Cir.1999) (same); *In re Stratosphere Corp. Sec. Litig.,* 1 F.Supp.2d 1096, 1107 (D.Nev. 1998) (continuing to allow plaintiffs to plead facts showing strong circumstantial evidence of reckless behavior); *In re Baesa Sec. Litig.,* 969 F.Supp. 238, 240–42 (S.D.N.Y.1997) (continuing to allow plaintiffs to plead facts showing strong circumstantial evidence of reckless behavior); *Fugman v. Aprogenex, Inc.,* 961 F.Supp. 1190, 1195 (N.D.Ill.1997) (requiring heightened pleading but allowing state of mind to be shown by motive and opportunity); *Norwood Venture Corp. v. Converse, Inc.,* 959 F.Supp. 205, 208 (S.D.N.Y.1997) (requiring a strong inference of knowing or intentional misconduct by defendants); *Marksman Partners, L.P. v. Chantal Pharm. Corp.,* 927 F.Supp. 1297, 1311 (C.D.Cal.1996) (requiring heightened pleading but allowing state of mind to be shown by motive and opportunity).

■ Fortunately, this debate was resolved recently for district courts in the Eleventh Circuit when the Court of Appeals held that the Reform Act does heighten the pleading standard in that a plaintiff must set forth particularly those facts that create a strong inference that the defendant acted with the required state of mind, but the Reform Act does not change the required state of mind itself. *Bryant v. Avado Brands, Inc.,* 187 F.3d 1271, 1283 (11th Cir.1999). Therefore, in the Eleventh Circuit, a strong inference of severe recklessness remains the standard by which a plaintiff may satisfy the scienter requirement. *Id.,* at 1283. Although motive and opportunity may be evidence that, along with other evidence, might contribute to an inference of willfulness or recklessness, they alone do not suffice to create the required strong inference. *Id.* at 1285–86.

■ In this case, the Court finds that Plaintiffs have failed to allege adequately facts that create a strong inference that Defendants intentionally or recklessly misrepresented both TheraSeed®'s acceptance by patients and medical professionals and the reduction of Indigo's sales efforts. Even if this Court had found that sufficient particularity exists for Plaintiffs' allegation that Defendants did make false statements, the Amended Complaint still would not satisfy the requirement of a strong inference that Defendants knew or recklessly disregarded that their statements were false or misleading. Plaintiffs' Amended Complaint provides no facts that constitute sufficient circumstantial evidence of severe recklessness on the part of Defendants.

First, Plaintiffs have provided no reference to show that Defendants knew that Amersham's shortage was temporary and that Theragenics' revenues consequently would decrease once Amersham remedied the shortage. This is not a matter that they can be expected or assumed to know; and knowledge is the foundation of scienter. Indeed, with the exception of Defendants Jacobs and Smith's stock trades during the class period, Plaintiffs have provided no factual support whatsoever for their allegations that Defendants acted

with the required state of mind. Plaintiffs only allegations regarding scienter are as follows:

23. Defendants were aware of Amersham's production shortages and knew that the increases in Theragenics' sales were a direct result of those shortages. Throughout the Class Period, however, defendants used the Company's increasing sales results to falsely claim to investors that acceptance of palladium–103 TheraSeeds® was growing, when in fact defendants knew that the increase in TheraSeed® sales was primarily attributable to the dramatically reduced availability of Iodine–125 seeds....

\*　　\*　　\*　　\*　　\*　　\*

48. As alleged herein, defendants acted with scienter in that defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, defendants, by virtue of their receipt of information reflecting the true facts regarding Theragenics, their control over, and/or receipt and/or modification of Theragenics's allegedly misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Theragenics, participated in the fraudulent scheme alleged herein.

(Pls.Am.Compl.¶¶ 23, 48.) These conclusory allegations wholly fail to satisfy the Reform Act's "strong inference" standard for pleading scienter. *See e.g., In re Comshare, Inc. Sec. Litig.,* 1997 WL 1091468, at *8 (E.D.Mich. Sept. 18, 1997) ("The complaint simply alleges, in the most conclusory and speculative fashion, that defendants had knowledge of the revenue recognition problem. However, nowhere in the complaint are there facts that

point to the defendants' knowledge. The complaint does not allege that any of the defendants committed the violations of revenue policy; nor does it allege which defendant knew what, how they knew it, or when."), *aff'd,* 183 F.3d 542, (6th Cir.1999).

Second, Plaintiffs' reference to Defendants Jacobs and Smith's stock sales during the class period are insufficient by themselves to show scienter in this case. While it is true that unusual insider trading during the class period may support a strong inference of scienter, *Acito v. IMC-ERA Group, Inc.,* 47 F.3d 47, 54 (2d Cir. 1995); *Marksman Partners, L.P. v. Chantal Pharm. Corp.,* 927 F.Supp. 1297, 1312 (C.D.Cal.1996), the Plaintiffs in this case cannot base scienter on stock sales alone. The stock sales may constitute circumstantial evidence that Defendants Jacobs and Smith knew Theragenics' stock price was artificially inflated and may *support* a strong inference of scienter. *See In re Miller Indus., Inc. Sec. Litig.,* 12 F.Supp.2d 1323, 1332 (N.D.Ga.1998) ("Unusual insider trading during the class period may support a strong inference of scienter."). In *Miller Industries,* this Court found that stock sales by the individual defendants did support a strong inference of scienter, but specifically noted that these sales constituted evidence "in addition" to alleged accounting violations. In contrast, Plaintiffs in this case have not provided even the slightest additional factual support for the existence of scienter. There are many reasons why Defendants Jacobs and Smith may have sold stock during the class period. This Court refuses to simply assume that these sales were the product of fraudulent intent. If the Plaintiffs rely upon stock sales, they must allege facts showing that the stock sales were unusual or out of the ordinary. Plaintiffs' allegations raise only issues of motive and opportunity, which the Eleventh Circuit and this Court previously have held are insufficient alone to create a strong inference of scienter. *Bryant v. Avado Brands, Inc.,* 187 F.3d 1271, 1285–86 (11th Cir.1999); *Carley Capital Group v. Deloitte & Touche, L.L.P.,* 27 F.Supp.2d

1362

1324, 1339 (N.D.Ga.1998); *Sturm v. Marriott Marquis Corp.*, 26 F.Supp.2d 1358, 1369 (N.D.Ga.1998); *see also In re Credit Acceptance Corp. Sec. Litig.*, 50 F.Supp.2d 662, 676–77 (E.D.Mich.1999) (stating that "an attempt by Plaintiffs to use stock sales to demonstrate knowledge is a classic example of the 'motive and opportunity' test"); *cf. Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 54 (2d Cir.1995) (including stock sales in court's motive and opportunity analysis); *Marksman Partners, L.P. v. Chantal Pharm. Corp.*, 927 F.Supp. 1297, 1312 (C.D.Cal.1996) (same).

Plaintiffs themselves admit as much: "Defendants had a *motive* to make Theragenics financial performance appear better than it was, *as evidenced by their profits from insider sales.*" (Pls.' Resp. to Defs.' Motion to Dismiss Consolidated Amended Complaint, at 18) (emphasis added). Nevertheless, Plaintiffs fail to allege that the selling Defendants had knowledge at the time of the sales that the company's stock price would collapse due to the artificial revenue boost. In the words of Judge Fitzpatrick of the Middle District, "the Plaintiffs' failure to allege the specifics of what the Defendants knew and when the Defendants knew it is fatal to their attempt to raise a strong inference of scienter." *Bryant v. Apple South, Inc.*, 100 F.Supp.2d 1368, 1379 (M.D.Ga.2000). If Plaintiffs can provide additional evidence of such knowledge, these stock sales might possibly provide the requisite inference of scienter attributable to Defendants Jacobs and Smith. Until Plaintiffs can identify such evidence, however, the scienter element remains inadequately pled.

*D. Controlling Person Liability*

██ Pursuant to Section 20(a) of the Securities Exchange Act of 1934, any person who "controls" someone who violates that Act is jointly and severally liable for the violation. 15 U.S.C. § 78t(a). The Securities Exchange Act's implementing regulations define control as "the possession, direct or indirect, of the power to direct or cause the direction of the management policies of a person." 17 C.F.R.

§ 230.405. To survive a motion to dismiss, a plaintiff who asserts controlling person liability must allege that the defendant had the power to control both (1) the general affairs of the primary violator and (2) the specific corporate policy that resulted in the primary violation. *Brown v. Enstar Group, Inc.*, 84 F.3d 393, 396 (11th Cir. 1996). *See generally* Bradford R. Turner, Recent Development, Brown v. Enstar Group, Inc.: *The Eleventh Circuit Opens the Door for Expansive Controlling Person Liability Under the 1933 and 1934 Securities Acts*, 32 Ga.L.Rev. 323, 341–44 (reviewing Eleventh Circuit's standard for controlling person liability).

██ In this case, Plaintiffs have adequately alleged controlling person liability as to the individual Defendants, Jacobs and Smith. Plaintiffs allege that both Jacobs and Smith were officers of Theragenics during the class period who through their positions could control Theragenics's general affairs and that Jacobs and Smith possessed the authority to control the content of the public statements and financial statements disseminated. Pursuant to *Brown*, these allegations would be sufficient for Plaintiffs to state a cause of action for controlling person liability if Plaintiffs' Amended Complaint had alleged the elements of securities fraud adequately in accordance with the Fed.R.Civ.P. 9(b) and the Reform Act, as discussed above in great detail.

*E. Leave to Amend*

██ In the Eleventh Circuit, there is a presumption that leave to amend should be granted at least once after the dismissal of a complaint when a more adequately pled complaint might state a cause of action. *See e.g., Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir.1991) ("If our precedent leaves any doubt regarding the rule to be applied in this circuit, we now dispel that doubt by restating the rule. Where a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice."); *In re BankAmerica*

*Corp. Sec. Litig.,* 78 F.Supp.2d 976, 995, 1000 (E.D.Mo.1999) (allowing leave to amend where plaintiffs failed to comply with heightened pleading requirements of the Reform Act); *Feeney v. Mego Mortgage Corp.,* 45 F.Supp.2d 1356, 1358 (N.D.Ga.1999) (same); *Coates v. Heartland Wireless Communications, Inc.,* 26 F.Supp.2d 910, 923 (N.D.Tex.1998) (same); *In re Health Management Sys., Inc. Sec. Litig.,* 1998 WL 283286, at *7 (S.D.N.Y. June 1, 1998) (same). The law applying the Reform Act is unsettled, and the Plaintiffs should be given an opportunity to restate their claims in a manner consistent with this Order. Therefore, the Plaintiffs are granted permission to file a second Amended Complaint within 30 days from the docketing of this Order.

## IV. CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss [Doc. 15] is GRANTED. Leave to amend is GRANTED.