### In re MILLER INDUSTRIES, INC. SECURITIES LITIGATION

#### No. CIV.A.1:97–CV–2811–T.

United States District Court,
N.D. Georgia,
Atlanta Division.

Nov. 20, 2000.

L. Joseph Loveland, Jr., Barry Goheen, King & Spalding, Atlanta, GA, for Arthur Anderson LLP, movants.

Todd S. Collins, phv, Nicholas J. Guiliano, phv, Karen S. Orman, phv, Berger & Montague, Philadelphia, PA, Martin D. Chitwood, Christi A. Cannon, Chitwood & Harley, Atlanta, GA, Kurt B. Olsen, phv, The Olsen Law Firm, Washington, DC, for Manuel Vela, on behalf of himself and all others similarly situated, plaintiffs.

Peter Quirk Bassett, Oscar N. Persons, Rebecca McLemore Lamberth, John Allen Jordak, Jr., John H. Goselin, II, Jenna Lynne Fruechtenicht, Alston & Bird, At-

lanta, GA, for Miller Industries, Inc., William G. Miller, Jeffrey I. Badgley, Frank Madonia, H. Patrick Mullen, L. Stanley Neeley, Daniel H. Sebastian, Richard H. Roberts, defendants.

## ORDER

THRASH, District Judge.

This is a complex securities fraud class action brought by shareholders of Miller Industries, Inc. against the Corporation and seven of its officers and directors. It is before the Court on Plaintiffs' Motion for Partial Summary Judgment as to Liability Against Defendant Miller Industries, Inc. [Doc. 108], Defendants' Motion for Summary Judgment [Doc. 109], and Defendants' Renewed Motion to Dismiss Plaintiffs' Consolidated Class Action Complaint [Doc. 128]. For the reasons set forth below, the Court denies Plaintiffs' Motion for Partial Summary Judgment, grants Defendants' Motion for Summary Judgment, and denies as moot Defendants' Renewed Motion to Dismiss.

## I. BACKGROUND

Plaintiffs represent a class of purchasers of Miller Industries common stock during the period from November 6, 1996, to September 11, 1997. Defendant Miller Industries is a Tennessee corporation with its principal place of business in Atlanta, Georgia. It is engaged in the business of providing vehicle towing and recovery equipment systems and services. Since 1990, Miller Industries has grown rapidly by acquiring towing equipment manufacturers and distributors and towing services companies. Miller Industries manufactures and distributes towing and recovery equipment under various brand names. It markets its towing services under the RoadOne brand name. The other Defendants in this case are William G. Miller, Chairman of the Board of Directors and Co–Chief Executive Officer of Miller Industries; Jeffrey I. Badgley, President, Co–Chief Executive Officer and a member of

the Board; Frank Madonia, Vice–President, Secretary, and General Counsel; H. Patrick Mullen, Director; L. Stanley Neely, Vice–President, President of Miller Industries' Financial Services Group; Daniel N. Sebastian, Director; and Richard H. Roberts, Director.

This securities fraud class action is based primarily upon misrepresentations and omissions that Defendants allegedly made in various public statements during the class period. The alleged misrepresentations and omissions related, directly or indirectly, to the rate of expected sales or earnings growth at Miller Industries. The Plaintiffs allege that during the class period the price of Miller Industries' common stock was inflated because of these alleged misrepresentations and omissions, and that they purchased their shares at these inflated prices. The Plaintiffs allege that on September 12, 1997, Defendants disclosed the results of operations for the quarterly period ending July 31, 1997. The company also announced that it was beginning to see an industry wide slowing of growth in demand for its products. The Plaintiffs allege that the price of Miller Industries' common stock fell more than 30 % on September 12, 1997, causing them to incur significant financial losses. Based on these allegations, Plaintiffs assert that each Defendant knowingly and recklessly violated Section 10(b) of the Securities Exchange Act of 1934, and Rule 10b–5 promulgated by the Securities Exchange Commission pursuant to Section 10(b). The Plaintiffs further assert that the individual Defendants are liable under Section 20(a) of the Securities Exchange Act as control persons by virtue of their executive positions and knowledge of Miller Industries' business and operations.

The Defendants moved to dismiss the case in its entirety pursuant to Fed. R.Civ.P. 12(b)(6) for failure to state a claim [Doc. 25]. After careful review, the Court concluded that Plaintiffs had stated a claim for securities fraud with respect to seven alleged misrepresentations or omissions

that possibly violated Generally Accepted Accounting Principles ("GAAP"). These seven alleged violations of GAAP are as follows.

1. Defendants, in a November 6, 1996, prospectus and registration statement, materially misrepresented the revenues of a company it acquired, Vulcan International, Inc. According to Plaintiffs, Defendants intentionally and improperly understated Vulcan's pre-merger revenues. Under pooling of interest accounting rules, Miller Industries was required to use consistent accounting rules to present comparative financial data for the two companies as if they had been merged during prior reporting periods. Plaintiffs contend that Defendants should have "grossed up" Vulcan's net sales figures for truck chassis sales to show historical pre-acquisition earnings for the *combined* Miller and Vulcan entities. This understatement of pre-merger revenues consequently made Miller Industries' post merger revenue growth look greater than it actually was. Failure to "gross up" the Vulcan premerger financial data resulted in materially misleading revenue growth in the following subsequent public statements: (1) a December 10, 1996, announcement; (2) the October 1996 Form 10–Q filed with the Securities & Exchange Commission ("SEC"); (3) a March 6, 1997, press release; (4) the January 1997 Form 10–Q; (5) a July 8, 1997, announcement; and (6) the 1997 Form 10–K.

2. Defendants materially overstated Miller Industries' revenue growth in its core manufacturing business by combining it with revenue from Miller Industries' non-manufacturing business, thereby misrepresenting the growth rate of revenues in the manufacturing business. These alleged misrepresentations were included in the December 10, 1996, announcement and the October 1996 Form 10–Q.

3. Defendants misrepresented in the October 1996 Form 10–Q "other assets" of $3.1 million by including loans to customers of questionable creditworthiness. According to Plaintiffs, these loans violated

GAAP by failing to reserve properly for uncollectible accounts.

4. Defendants materially misrepresented in the October 1996 Form 10–Q a one-time, $1.8 million gain arising from a patent infringement judgment. According to Plaintiffs, Defendants falsely did not disclose that this recovery was significant to net income for the three-month period ending October 31, 1996.

5. Defendants improperly accepted trade-ins at inflated prices, causing Miller Industries to account for those trade-ins at a cost that was substantially greater than the market price. According to Plaintiffs, this violated GAAP and also Miller Industries' own accounting policies as described in the 1996 and 1997 Form 10–Ks.

6. Defendants misrepresented one-time gains totaling $650,000 in the 1997 Form 10–K.

7. Defendants engaged in the practice of "channel stuffing." Channel stuffing is the practice of artificially stimulating short-term revenues by offering extraordinary discounts and trade-ins, extended payment terms, and other unusual financing arrangements to mask deterioration of revenues. According to Plaintiffs, Defendants engaged in channel stuffing to mask deterioration of revenues in Miller Industries' core manufacturing business.

In ruling on the Motion to Dismiss, the Court did not allow Plaintiffs to proceed on their claim that Defendants used certain securities analysts as conduits for the publication of false information. The Court also did not allow Plaintiffs to proceed on their claims that unspecified Defendants engaged in misrepresentations during a February, 1997 conference call with analysts and that Defendant William Miller misrepresented on July 8, 1997, that the company "expected to continue [its] growth in the future." Additionally, the Court dismissed claims that Defendants failed to inform investors that their attempted vertical integration of the towing industry could give rise to violations of the

Sherman Antitrust Act, 15 U.S.C. § 2. Following extensive discovery, Plaintiffs filed a Motion for Partial Summary Judgment as to issues of liability. Defendants have filed their own Motion for Summary Judgment plus a Renewed Motion to Dismiss. Both parties have fully briefed the Court on the pertinent issues in their motions. The Court also held oral argument on October 2, 2000, at the request of the parties.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The court should view the evidence and any inferences that may be drawn in light most favorable to the nonmovant. *Adickes v. S.H. Kress and Co.,* 398 U.S. 144, 158–159, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 257, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "[A] party may not avoid summary judgment solely on the basis of an expert's opinion that fails to provide specific facts from the record to support its conclusory allegations." *Evers v. General Motors Corp.,* 770 F.2d 984 (11th Cir.1985).

## III. DISCUSSION

### A. MOTIONS FOR SUMMARY JUDGMENT

■ Section 10(b) of the Securities Exchange Act of 1934 [hereinafter "Section 10(b)"] prohibits any person from using, in connection with the sale of any security, any deceptive device in contravention of such rules and regulations as the Securities and Exchange Commission ("SEC") may prescribe. 15 U.S.C. § 78j(b). Based on this statute, the SEC has promulgated 17 C.F.R. § 240.10b–5 [hereinafter "Rule 10b–5"] to prohibit the making of any untrue statement or omission of material fact that would render statements misleading in connection with the purchase or sale of any security. To succeed on a securities fraud claim under Rule 10b–5, a plaintiff must prove that the defendant (a) made a misstatement or omission, (b) of material fact, (c) with scienter, (d) in connection with the purchase or sale of securities, (e) upon· which the plaintiff relied, (f) that proximately caused the plaintiff's injury. *Bryant v. Avado Brands, Inc.,* 187 F.3d 1271, 1281 (11th Cir.1999); *Robbins v. Koger Properties, Inc.,* 116 F.3d 1441, 1447 (11thCir.1997); *Bruschi v. Brown,* 876 F.2d 1526, 1528 (11th Cir.1989); *Sturm v. Marriott Marquis Corp.,* 26 F.Supp.2d 1358, 1364–65 (N.D.Ga.1998).

Plaintiffs seek summary judgment on the issues of liability in this case. They contend that Defendants have not set forth any genuine issue of material fact to refute Plaintiffs' allegations that (1) Defendants materially misrepresented one-time income Miller Industries received from a $1.8 million patent infringement judgment and (2) Defendants intentionally and improperly understated Vulcan's pre-merger revenues, which consequently made Miller Industries revenue growth appear greater than it actually was after the Vulcan merger.

Defendants also seek summary judgment. First, Defendants contend that Plaintiffs have abandoned five of the seven claims that survived the Motion to Dismiss stage. Second, Defendants contend that Plaintiffs have failed to set forth any genuine issue of material fact that Defendants engaged in securities fraud on the two remaining claims—Defendants' alleged material misrepresentation of the $1.8 mil-

lion patent judgment and their alleged understatement of pre-Vulcan-merger revenues.

The Court concludes that Defendants are correct that Plaintiffs have quietly abandoned five of their seven claims for securities fraud in this case. Plaintiffs have failed to set forth a triable issue of fact on the following five claims: (1) Defendants' alleged overstatement of growth in Miller Industries' core manufacturing business; (2) Defendants' alleged failure to reserve properly for uncollectible accounts; (3) Defendants' alleged improper acceptance of trade-ins at inflated prices; (4) Defendants' alleged misrepresentation of $650,000 in one-time gains; and (5) Defendants' alleged "channel stuffing." Plaintiffs' briefs on the summary judgment motions and documentary and testimonial evidence presented in support of their briefs address only the $1.8 million patent judgment and the alleged understatement of pre-Vulcan-merger revenues. Additionally, Plaintiffs' accounting expert has failed to provide any analysis that would support the other five claims. Also, Defendants in their briefs and at oral argument specifically emphasized the lack of evidence regarding these five claims, and Plaintiffs have not challenged Defendants' characterization of the status of those claims. Failure to respond indicates lack of opposition to a motion. Local Rule 7.1(B). The Court, therefore, in this Summary Judgment Order addresses in detail only the two remaining claims, the alleged misrepresentations regarding the $1.8 million patent judgment and Miller Industries' failure to "gross up" pre-Vulcan-merger revenues.

### 1. FALSE STATEMENTS OR OMISSIONS

Rule 10b–5 prohibits the making of any untrue statement of material fact or the omission of a material fact that would render statements misleading. 17 C.F.R. § 240.10b–5. As discussed above, at issue are alleged false statements relating to two transactions. The parties first contest whether Defendants misrepresented the effect of a gain arising from a $1.8 million patent infringement judgment. According to Plaintiffs, Defendants in their October 1996 10–Q included the $1.8 million recovery in ordinary income. Plaintiffs contend that this created a false impression that Miller Industries' continuing operations were growing at an extremely high rate, when in reality net income for the quarter was materially inflated by this one-time gain that would not recur in future quarters.

Plaintiffs emphasize the following October 31, 1996, statement that Defendants included in their 10–Q regarding the patent litigation judgment: "[T]he impact of this payment net of expenses associated with this lawsuit and related patent infringement litigation was not significant to net income for the six months ended October 31, 1996." Plaintiffs argue that while Miller Industries said the judgment was not material to the *six*-month period ending October 31, 1996, it impermissibly failed to disclose that the patent litigation judgment was material to the *three*-month quarterly period that ended October 31, 1996.

Defendants have a different interpretation. It is undisputed that Miller Industries publicly reported the patent litigation judgment on ten occasions. In only three was there any mention of the effect of the judgment upon the company's earnings. According to Defendants, Miller Industries never misrepresented the impact of the patent litigation judgment on its quarterly results ending October 31, 1996. Indeed, Defendants contend that they never made any affirmative statement whatsoever regarding the impact of the judgment on Miller Industries' quarterly results. Defendants claim that they only said that the patent litigation recovery would not be significant to Fiscal Year 1997 year-end results, the six months ended October 31, 1996, and the nine months ended January 31, 1997. According to Defendants, they

**1378**

had no duty to disclose whether the patent litigation judgment affected the quarter ended October 31, 1996, and did not do so. They contend that none of the Company's statements can be read in any way to imply that the patent litigation judgment was immaterial for the shorter, three-month period. In short, Defendants contend that making an affirmative statement about the effect of a judgment on six-month figures does not automatically trigger a duty to make a statement regarding its effect on quarterly figures.

 Omissions are actionable only if a defendant possesses a duty to disclose. *Rudolph v. Arthur Andersen & Co.*, 800 F.2d 1040, 1043 (11th Cir.1986). "Silence absent a duty to speak, is not misleading under Rule 10b–5." *Basic, Inc. v. Levinson*, 485 U.S. 224, 239 n. 17, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988). In the Eleventh Circuit, "[a] duty to disclose may be created by a defendant's previous decision to speak voluntarily. Where a defendant's failure to speak would render the defendant's own prior speech misleading or deceptive, a duty to disclose arises." *Clay v. Riverwood Int'l Corp.*, 157 F.3d 1259, 1268 (11th Cir.1998) (quoting *Rudolph*, 800 F.2d at 1043). Whenever a defendant makes voluntary statements, it must speak completely in order to avoid "half-truths." *First Virginia Bankshares v. Benson*, 559 F.2d 1307, 1314 (5th Cir.1977). No duty to disclose arises, however, if sufficient information already exists in the public domain. *Seibert v. Sperry Rand Corp.*, 586 F.2d 949, 951 (2d Cir.1978); *Johnson v. Wiggs*, 443 F.2d 803, 806 (5th Cir.1971).

 The question here is whether Miller Industries' statement that the patent litigation judgment was not significant to net income for the six months ending October 31, 1996, triggered a duty to disclose whether the judgment also would not materially affect income for the shorter, three-month period ending October 31, 1996. The Court concludes that no duty to disclose was triggered here. First, Defendants' failure to state whether the impact on quarterly earnings was material did not render misleading previous statements that the earnings impact for the six-month period was not material. Even if the impact on quarterly earnings was material, that fact did not alter Defendants' previous statement that the effect on earnings for the six-month period was not material. Plaintiffs have presented no reliable evidence whatsoever that the impact of the judgment on the six-month period was material.

Second, Defendants spoke no "half-truth" requiring additional disclosure when they stated that the earnings impact for the six-month period was not material. The First Circuit has explained:

> [E]ven a voluntary disclosure of information that a reasonable investor would consider material must be 'complete and accurate.' This, however, does not mean that by revealing one fact about a product, one must reveal all others that, too, would be interesting market-wise, but means only such others, if any, that are needed so that what was revealed would not be so incomplete as to mislead.

*Backman v. Polaroid Corp.*, 910 F.2d 10, 16 (1st Cir.1990). This Court believes that the same reasoning applies not just to product information but also to all other information in earnings statements. Defendants stated the amount of the patent judgment and that it was not material for a number of different time periods. Although it might have been helpful for the Company to state whether the judgment also was not material for the shorter three-month period, failure to reveal this information was not so incomplete as to mislead. The Company informed investors of both the amount of the judgment and the Company's overall earnings. A corporation that provides dollar-specific financial information for its investors and then happens to conclude that the effect of that information is not material over a given period should not, absent additional circumstances not present here, be required to state whether the information is

material for all other periods or even whether there exists some point on a timeline when the information switches from non-material to material. This is especially the case with relatively simple financial information requiring an investor merely to engage in grade-school arithmetic.

Finally, Plaintiffs' expert relies entirely upon speculation and conjecture in concluding that the Company's quarterly earnings were materially affected by the collection of the patent litigation judgment. The Company's Arthur Anderson auditor testified that only $200,000 from the judgment was taken into income. The remainder went to legal expenses and a reserve for expenses of similar litigation. Plaintiffs' accounting expert in his Rule 26 statement speculates that as much as $884,000 from the judgment may have been taken into income during the October 31, 1996 quarter. In order to create a genuine issue of fact that the Company's statements were so false and misleading as to constitute fraud, the Plaintiffs must come forward with more than speculation and conjecture. As previously noted, "a party may not avoid summary judgment solely on the basis of an expert's opinion that fails to provide specific facts from the record to support its conclusory allegations." *Evers v. General Motors Corp.,* 770 F.2d 984, 986 (11th Cir.1985). The opinion of Plaintiffs' expert rests entirely upon speculation and conjecture. The Defendants are entitled to summary judgment upon the claim relating to the patent litigation judgment.

■ The parties next contest whether Defendants intentionally and improperly understated the pre-merger revenues of Vulcan International, Inc., consequently making Miller Industries' revenue growth after the merger appear greater than it actually was. Plaintiffs contend that once Miller Industries acquired Vulcan in September, 1996, the "pooling of interest" accounting rules required Miller Industries to "gross up," or restate Miller Industries' historical pre-acquisition earnings to show historical pre-acquisition earnings for the combined Miller and Vulcan entities. Plaintiffs allege that Defendants made a conscious decision not to "gross up" certain pre-acquisition Vulcan chassis sales. Defendants respond that they did not "gross up" Vulcan chassis sales because their accountants at Arthur Andersen did not consider it necessary. According to Defendants, Arthur Andersen concluded that Vulcan's chassis sales did not need to be "grossed up" because the relevant chassis sales were immaterial to Miller Industries' consolidated results and because Vulcan treated them differently in a "title" sense.

■ The issue here is whether Miller Industries' failure to "gross up" Vulcan chassis sales rendered the Company's financial statements false or misleading. The overstatement of revenues and income in violation of GAAP may constitute false or misleading statements of material fact in violation of Rule 10b–5. *Gross v. Medaphis Corp.,* 977 F.Supp. 1463, 1472 (N.D.Ga.1997); *In re Discovery Zone Sec. Litig.,* 943 F.Supp. 924, 936–37 (N.D.Ill. 1996); *Marksman Partners, L.P. v. Chantal Pharm., Corp.,* 927 F.Supp. 1297, 1304 (C.D.Cal.1996). The accounting principle relevant here is outlined in Accounting Principles Board Opinion Number 16. It states that combined entities should be reported as "though the companies had been combined as of the beginning of the period ... on substantially the same basis." *Codification of Accounting Standards and Procedures,* Accounting Principles Board Opinions, No. 16 (American Inst. Of Certified Pub. Accountants 2000). GAAP, however, is not a set of rigid rules seeking to ensure identical treatment in each transaction. Instead, GAAP "includes broad statements of accounting principles amounting to aspirational norms as well as more specific guidelines and illustrations." *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1421n.10 (3d Cir.1997) (citations and quotations omitted); *accord Lovelace v. Software Spectrum, Inc.,* 78 F.3d 1015, 1021 (5th

Cir.1996). As the Supreme Court has recognized, GAAP "tolerate[s] a range of 'reasonable' treatments, leaving the choice among alternatives to management." *Thor Power Tool Co. v. C.I.R.*, 439 U.S. 522, 544, 99 S.Ct. 773, 58 L.Ed.2d 785 (1979). The Court, therefore, must determine whether Plaintiffs have provided sufficient evidence for a trier of fact to conclude that it was unreasonable for Miller Industries not to "gross up" Vulcan's chassis sales.

The Court concludes that a sufficient jury issue exists here that Defendants made false statements when they did not "gross up" Vulcan chassis sales. Plaintiffs' expert contends that Miller Industries was required to "gross up" the Vulcan chassis sales and that its failure to do so violated GAAP. Board Opinion No. 16 states that combined entities should be reported as "though the companies had been combined as of the beginning of the period ... on substantially the same basis." *Codification of Accounting Standards*, Accounting Principles Board Opinions, No. 16. Plaintiffs also provide evidence that could support a finding that Defendants selectively grossed-up some Vulcan chassis sales while failing to do so with others. Plaintiffs allege that Defendants "grossed up" chassis sales for the pre-acquisition period May to September, 1996, and then reported these sales in the January, 1997 quarter by way of a "catch-up" entry. Defendants, however, did not "gross up" Vulcan chassis sales for the pre-acquisition periods before May, 1996. According to Plaintiffs, the effect was to materially inflate the growth rates for periods in which Defendants "grossed up" sales as compared with the corresponding periods for the year before, namely the January, 1996 quarter and the fiscal year ending April, 1996. The Court cannot conclude as a matter of law that this practice, if it actually occurred, did not render growth rates misleading. Accordingly, the Court concludes that Plaintiffs have provided sufficient evidence to withstand summary judgment that Defendants' GAAP violations constituted false state-ments or omissions regarding the effect of the Vulcan merger.

## 2. MATERIALITY

■ Materially misleading statements or omissions by a defendant constitute the primary element of a Rule 10b–5 violation. *Basic, Inc. v. Levinson*, 485 U.S. 224, 246–47, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988). A false statement or omission will be considered "material" if its disclosure would alter the total mix of facts available to an investor and "if there is a substantial likelihood that a reasonable shareholder would consider it important" to the investment decision. *Id.* Materiality is a mixed question of law and fact. *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir.1985).

■ The parties disagree whether failure to "gross up" the Vulcan chassis sales was material. Plaintiffs contend that Miller was an aggressive-growth company that needed to show high sales growth in order to retain investor confidence. Plaintiffs, for example, allege that Miller Industries in its January 1997 10–Q reported 61.2% sales growth but that the actual sales growth was only 44.7%. According to Plaintiffs, Defendants' failure to "gross up" the Vulcan chassis sales accounts for this 16.5% difference. Defendants contend that the chassis sales were not material because (1) the market did not consider chassis sales when evaluating Miller Industries' net sales growth and (2) the total mix of information the market considered would not have been significantly altered even if the chassis sales were relevant. Defendants' experts considered analyst reports published during the relevant time as evidence of what the market considered relevant information and have concluded that many analysts backed out chassis sales to provide a better representation of Miller Industries' actual sales. Defendants have provided as Exhibit A to their Memorandum in Support of their Motion for Summary Judgment numerous statements that analysts made before and dur-

ing the class period. These statements show the consistent practice of the analyst community was to disregard Miller Industries' chassis sales. The Robinson–Humphrey Company, for example, in five analyst reports released between April 2, 1996, and September 4, 1997, specifically stated that its analysis was "excluding chassis." Another investment house, Stephens, Inc., stated on April 15, 1996:

> MLR has conservative accounting policies. However, MLR's auditors have required the Company to include in net sales the sales of chassis. Approximately 32% of MLR's sales dollars are from the chassis which are sold at a minimal markup (estimated gross profit margin of 2%). This practice overstates sales and understates gross profit margin. Backing out chassis sales provides a better representation of MLR's operations.

Bear Sterns & Co. stated on May 28, 1997, that "[t]he decline in the consolidated gross [profit] margin was solely a reflection of the increased percentage of low-margin chassis sales (which are essentially a pass-through item with negligible margin) . . . ." And J.C. Bradford & Co. stated on February 4, 1997, that "[r]evenue of $62.3 million was up 58% from $39.4 million in 2Q96. This result was $5 million higher than our estimate of $57 million. The difference was attributable to chassis sales (which have little profitability), including many incorporated as a result of the Vulcan acquisition." Additional examples exist. Defendants also argue that the total mix of information the market considered would not have been significantly altered even if the chassis sales were relevant because the market considered a range of factors including net sales *ex chassis,* gross profits, gross profit margins, revenues, operating margins, and earnings per share. Defendants contend that the analysts' reports reflect the consideration of these numerous factors and that the chassis sales did not adversely affect these factors.

■ After careful review, the Court agrees with Defendants that the failure to "gross up" Vulcan chassis sales was not material. The only evidence Plaintiffs provide to show materiality is the accounting figures themselves, which reflect some inflation in sales growth. Defendants conversely provide substantial unrebutted evidence that, even if the market was more interested in sales growth than other factors such as profits, the market disregarded the chassis sales in calculating the sales growth. It is very important to emphasize that the accounting treatment of the chassis sales had no effect whatsoever upon *any* earnings figure or *any* comparative earnings figure. In a fraud on the market case, which Plaintiffs assert exists here, "the hypothetical 'reasonable investor' by reference to whom materiality is gauged must be 'the market' itself because it is the market, not any single investor, that determines the price of a publicly traded security." *Shaw v. Digital Equip. Corp.,* 82 F.3d 1194, 1218 (1st Cir.1996); *see also VeriFone Sec. Litig.,* 784 F.Supp. 1471, 1479 (N.D.Cal.1992) ("The fraud-on-the-market theory shifts the inquiry from whether an individual investor was fooled to whether the market as a whole was fooled."), *aff'd,* 11 F.3d 865, 872 (9th Cir. 1993). The record of analysts' reports, as provided above, clearly reflects that the market disregarded chassis sales in determining Miller Industries sales growth before and during the class period. Accordingly, the Court must conclude that any false statements that resulted from Defendants' failure to "gross up" Vulcan chassis sales were immaterial.

### 3. SCIENTER

■ The Supreme Court has defined scienter as "a mental state embracing intent to deceive, manipulate or defraud." *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 193, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976). Before the enactment of the Reform Act, the law in the Eleventh Circuit was clear that "a showing of 'severe recklessness' satisfies the scienter require-

ment." *McDonald v. Alan Bush Brokerage Co.*, 863 F.2d 809, 814 (11th Cir.1989).

> Severe recklessness is limited to those highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and that present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it.

*Id. (quoting Broad v. Rockwell Int'l Corp.*, 642 F.2d 929, 961 (5th Cir.1981) (en banc), *cert. denied*, 454 U.S. 965, 102 S.Ct. 506, 70 L.Ed.2d 380 (1981)). The Eleventh Circuit reaffirmed this standard for establishing scienter after the Reform Act. *Bryant*, 187 F.3d 1271, 1284–85 (11th Cir.1999). Therefore, in the Eleventh Circuit, a strong inference of severe recklessness remains the standard by which a plaintiff may satisfy the scienter requirement. *Id.* at 1283. Although motive and opportunity may be evidence that, along with other evidence, might contribute to an inference of willfulness or recklessness, they alone do not suffice to create the required strong inference. *Id.* at 1285–86.

■■■ Violations of GAAP alone are insufficient to demonstrate scienter in a Section 10(b) securities fraud action. *In re Comshare Sec. Litig.*, 183 F.3d 542, 553 (6th Cir.1999) ("The failure to follow GAAP is, by itself, insufficient to state a securities fraud claim."); *Stavroff v. Meyo*, No. 95–4188, 1997 WL 720475, at *6 (6th Cir. Nov. 12, 1997) (same); *Provenz v. Miller*, 102 F.3d 1478, 1490 (9th Cir.1996) (same); *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1020–21 (5th Cir.1996) (same); *In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1426 (9th Cir.1994) ("[Scienter] requires more than a misapplication of accounting principles."); *Theoharous v. Fong*, No. 1:98–CV–3034–JEC, at 63–65 (N.D.Ga. Mar. 10, 2000) (stating that "violations of GAAP alone are insufficient to allege a violation of § 10(b)"); *Vosgerichian v. Commodore Int'l*, 832 F.Supp. 909,

915 n. 8 (E.D.Pa.1993) (same),*vacated on other grounds*, 862 F.Supp. 1371 (E.D.Pa. 1994). The alleged GAAP violation must be combined with other factors, such as a drastic overstatement of financial results, to give rise to a strong inference of scienter. *Carley Capital Group v. Deloitte & Touche, L.L.P.*, 27 F.Supp.2d 1324, 1339 (N.D.Ga.1998).

■■■ Given that the failure to "gross up" Vulcan chassis sales was not material, Plaintiffs have not presented sufficient evidence that Defendants' failure to do so was an incorrect judgment. Even, however, if they had presented sufficient evidence of materially false statements, "[t]hat contention is not sufficient to establish scienter." *In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1426 (9th Cir.1994). A plaintiff must show "that the accounting judgments that were made were such that no reasonable accountant would have made the same decision if confronted with the same facts." *Id.* (quoting *SEC v. Price Waterhouse*, 797 F.Supp. 1217, 1240 (S.D.N.Y.1992)). Plaintiffs have not met this threshold. In essence, Plaintiffs have shown nothing more than that equally competent and reasonable accountants might disagree as to how the Vulcan chassis sales should have been treated after the merger. Plaintiffs cannot refute Defendants' evidence that the accounting decisions were not unreasonable. Defendants made a judgment call that the information was not material. While perhaps it would have been wiser for Defendants to "gross up" the chassis sales, their decision not to do so does not rise to a level of severe recklessness. This is also the case with respect to the treatment of the proceeds from the patent litigation judgment. Plaintiffs, therefore, cannot meet the standard of severe recklessness that the Eleventh Circuit requires. As Judge Sprizzo of the Southern District of New York has written:

> [The disputed] items involve complex issues of accounting as to which reasonable accountants could reach different conclusions. Indeed, ... the Court

heard diametrically opposing views from experts as to the reasonableness of [the] accounting and auditing judgments. It follows that no finding of fraud or recklessness can rationally be made in this case.

*Price Waterhouse,* 797 F.Supp. at 1241. Plaintiffs' contention that they would have done it differently does not by itself raise a triable issue that Defendants acted with severe recklessness demonstrating "an extreme departure from the standards of ordinary care." *See McDonald v. Alan Bush Brokerage,* 863 F.2d 809, 814 (11th Cir.1989) (stating that "severe recklessness is limited to those highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care"). Plaintiffs have presented no evidence that it was an extreme departure from the standards of ordinary care for Defendants to conclude that "grossing up" of the chassis sales was immaterial and consequently unnecessary. Defendants' failure to conclude that the issue was a material one and their subsequent failure to "gross up" cannot be attributed to severe recklessness. The Notes to Accounting Principles Board Opinion No. 16 specifically state that "Board Opinions are considered appropriate in all circumstances covered, but need not be applied to immaterial items." *Codification of Accounting Standards and Procedures,* Accounting Principles Board Opinions, No. 16 (American Inst. Of Certified Pub. Accountants 2000). Even if Defendants had made an incorrect judgment of the materiality here, Plaintiffs have presented no evidence of any culpability higher than simple negligence. Simple negligence is not sanctionable under federal securities fraud laws.

Additionally, as this Court previously has emphasized, Plaintiffs cannot rest their scienter arguments on insider stocks sales alone. "Unusual insider trading during the class period may support a strong inference of scienter." *In re Miller Indus., Inc. Sec. Litig.,* 12 F.Supp.2d 1323, 1332 (N.D.Ga.1998). Plaintiffs, however, "cannot base scienter on stock sales alone." *In re Theragenics Corp. Sec. Litig.,* 105 F.Supp.2d 1342, 1361 (N.D.Ga. 2000). Such allegations raise only issues of motive and opportunity, which the Eleventh Circuit and this Court previously have held are insufficient alone to create a strong inference of scienter. *Bryant v. Avado Brands, Inc.,* 187 F.3d 1271, 1285–86 (11th Cir.1999); *Carley Capital Group v. Deloitte & Touche, L.L.P.,* 27 F.Supp.2d 1324, 1339 (N.D.Ga.1998); *Sturm v. Marriott Marquis Corp.,* 26 F.Supp.2d 1358, 1369 (N.D.Ga.1998). The Defendants have pierced the pleadings and shown that the insider sales were part of a pattern of sales by insiders during public offerings. Fraud is not presumed. Because no reasonable jury could conclude that the requisite scienter exists, the Court must grant Defendants' Motion for Summary Judgment.

## B. DEFENDANTS' RENEWED MOTION TO DISMISS

In light of the Court's decision regarding Defendants' Motion for Summary Judgment, the Court need not address Defendants' Renewed Motion to Dismiss. Accordingly, the Court denies as moot Defendants' Renewed Motion to Dismiss.

## IV. CONCLUSION

For the reasons set forth above, Plaintiffs' Motion for Partial Summary Judgment as to Liability Against Defendant Miller Industries, Inc. [Doc. 108] is DENIED. Defendants' Motion for Summary Judgment [Doc. 109] is GRANTED and Defendants' Renewed Motion to Dismiss Plaintiffs' Consolidated Class Action Complaint [Doc. 128] is DENIED AS MOOT.