**In re THERAGENICS CORP. SECURITIES LITIGATION.**

No. CIV.A. 1:99CV141TWT.

United States District Court,
N.D. Georgia,
Atlanta Division.

April 2, 2001.

See also, 105 F.Supp.2d 1342.

Martin D. Chitwood, Chitwood & Harley, Atlanta, GA, Steven G. Schulman, phv, Salvatore J. Graziano, phv, Samuel H. Rudman, phv, Keith M. Fleischman, phv, Milberg Weiss Bershad Hynes & Lerach, New York City, Jeffrey R. Krinsk, phv, Finkelstein & Krinsk, San Diego, CA, Leonard Barrack, phv, Barrack Rodos & Bacine, Philadelphia, PA, Zachary Alan Starr, phv, Starr & Holman, New York City, Fred Taylor Isquith, phv, Shane T. Rowley, phv, Wolf Haldenstein Adler Freeman & Herz, New York City, Robert I. Harwood, phv, Jeffrey M. Haber, phv, Frederick W. Gerkens, phv, Wechsler Harwood Halebian & Feffer, New York City, Marc H. Edelson, phv, Hoffman & Edelson, Doylestown, PA, Joshua N. Rubin, phv, Abbey Gardy & Squitieri, New York City, Paul J. Scarlato, phv, Robert S. Kitchenoff, phv, Weinstein Kitchenoff Scarlato & Goldman, Philadelphia, PA, Bruce G. Murphy, phv, Law Offices of Bruce G. Murphy, Vero Beach, FL, Jonathan M. Plasse, phv, Goodkind Labaton Rudoff & Sucharow, New York City, Jeffrey L. Kodroff, phv, Spector Roseman & Kodroff, Philadelphia, PA, Dennis J. Johnson, phv, Jacob B. Perkinson, phv, Law Offices of Dennis J. Johnson, South Burlington, VT, Kevin J. Yourman, phv, Jordan L. Lurie, phv, Weiss & Yourman, Michael D. Braun, phv, Stull Stull & Brody, Los Angeles, CA, Jacqueline Sailer, phv, Brian P. Murray, phv, Rabin & Peckel, New York City, for plaintiffs.

Michael R. Smith, Martin Robert Thornton, Letitia A. McDonald, Dan Shamus McDevitt, King & Spalding, Atlanta, GA, for defendants.

## ORDER

THRASH, District Judge.

This is a private securities fraud class action brought by shareholders of Theragenics Corporation against the corporation and two of its officers. In an Order dated July 20, 2000, the Court dismissed Plaintiffs' First Amended Complaint but granted leave to amend. Plaintiffs filed a Second Amended Complaint. The case is now before the Court on Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint [Doc. 28]. For the reasons set forth below, the Court denies Defendants' Mo-

tion to Dismiss the Second Amended Complaint.

## I. BACKGROUND

The facts of this case were set out in detail by the Court in its July 20, 2000, Order, published at 105 F.Supp.2d 1342 (N.D.Ga.2000). For convenience, the essential facts are repeated here with the additional facts set forth in the Second Amended Complaint. Plaintiffs are members of a potential class of purchasers of Theragenics Corporation common stock during the period January 29, 1998, to January 11, 1999. Defendant Theragenics Corporation is a Delaware corporation with its headquarters in Norcross, Georgia. It is engaged in the business of producing and selling radioactive seed implants to treat prostate cancer. Defendant Christine Jacobs is President, Chief Executive Officer and Chairperson of Theragenics. Defendant Bruce Smith serves as Chief Financial Officer, Treasurer and Secretary of the company. Both individuals held their respective positions at all times material to the claims Plaintiffs set forth in their Second Amended Complaint.

Theragenics manufactures Palladium–103, also known as TheraSeed®. A competitor, Nycomed Amersham PLC (formerly Amersham International PLC) [hereinafter "Amersham"], is the primary supplier of Iodine–125, a similar product used to treat prostate cancer. For both products, medical professionals implant into the prostate between 40 and 100 rice-size radioactive seeds that emit radiation to destroy prostate cancer tumors. Iodine–125 seed implants began to be used to treat prostate cancer in the 1970's, but this treatment of prostate cancer was largely abandoned because of unsatisfactory results. By the late 1980's, however, new technology led to a resurgence in Iodine–125 seed treatment for prostate cancer. Thereafter, Theragenics entered the field with its own Palladium–103 TheraSeed®, which it previously had developed to treat other types of tumors. Theragenics' success in the field of prostate cancer treatment was tempered by the fact that TheraSeed®'s short half-life makes it less desirable than Iodine–125 for treating slow-growing prostate cancer. For this reason, according to the Amended Complaint, Iodine–125 has remained the preferred radioactive seed to treat prostate cancer.

In an attempt to bolster its earnings, on May 31, 1997, Theragenics granted Indigo Medical, Inc., a subsidiary of Johnson & Johnson Development Corporation, the exclusive worldwide right to market and sell TheraSeed®. This agreement with Indigo purportedly enabled Theragenics to focus on manufacturing instead of developing and maintaining its own sales force. By 1998, substantially all of Theragenics' sales occurred through Indigo. In early 1998, competitor Amersham began to encounter severe manufacturing shortages of Iodine–125. The waiting period for doctors who requested Iodine–125 increased from one month near the end of 1997 to more than four months by January 1998. This backlog became so great that in March 1998 Amersham notified its customers that it could not accept any new orders for Iodine–125 until further notice. As a result of this Iodine–125 shortage, doctors substituted TheraSeed® in their implant procedures and Theragenics revenues consequently increased. Theragenics became concerned that this increased demand—when coupled with Indigo's aggressive marketing efforts—could result in shortages of TheraSeed®, thus placing the company in the same position as Amersham. For that reason, Theragenics asked Indigo to reduce temporarily its TheraSeed® marketing efforts.

During the period that TheraSeed® enjoyed strong sales, allegedly because of

Amersham's Iodine–125 shortage Theragenics, in its public statements, said that doctors and patients increasingly considered TheraSeed® the prostate cancer treatment of choice, and that Indigo's marketing efforts were contributing to the acceleration in sales. Theragenics did not include cautionary statements that the increased sales were the temporary result of Amersham's Iodine–125 shortage, nor did it notify investors that it had asked Indigo to curb its sales efforts.

By August 1998, Amersham had remedied the Iodine–125 shortage and doctors thereafter returned to Iodine–125 as their primary radioactive seed for treating prostate cancer. As a result, Theragenics' fourth quarter 1998 earnings were below its earnings in previous quarters. In announcing its disappointing fourth quarter results, Theragenics did not disclose to investors that its decreased earnings resulted in any way from the renewed availability of Amersham's preferred Iodine–125 seeds or that it had directed Indigo to curb sales efforts. Instead, Theragenics blamed the earnings decrease on Indigo's inexperience in marketing the product. Theragenics' share price dropped 33.8% in one day, from $15.3125 to $10.125.

Plaintiffs have filed this suit alleging that Defendants knew or recklessly disregarded knowledge that the increase in Theragenics revenues in the first three quarters of 1998 resulted directly from Iodine–125 shortages, and that revenues would decline once Iodine–125 became readily available again. Furthermore, Plaintiffs allege that Defendants falsely attributed the early 1998 increase in revenues to both increased acceptance of TheraSeed® and Indigo's marketing efforts, which Theragenics actually had curtailed. Specifically, Plaintiffs have identified ten

statements[1] that they contend were false or misleading:

(1) A January 1998 statement that new cyclotrons would "supply anticipated increases in TheraSeed® demand generated by … Indigo Medical" and that "[t]he acceptance of the Company's non-invasive treatment for prostate cancer by the public and the medical community has been outstanding." (Plaintiffs' Second Amended Complaint, at ¶ 34.) [Doc.24]

(2) A February 1998 statement that "[i]n urology and prostate cancer treatment, there has never been a presence with a marketing prowess like Johnson & Johnson." (Plaintiffs' Second Amended Complaint, at ¶ 35.) [Doc.24]

(3) A statement in Theragenics' 1997 10–K that management "believe[d]" that TheraSeed® enjoyed a competitive advantage over Iodine–125 seeds. (Plaintiffs' Second Amended Complaint, at ¶ 36.) [Doc.24]

(4) An April 1998 Company press release announcing record first quarter revenues and earnings and stating, "[a]cceptance of TheraSeed® as a treatment of choice for prostate cancer by both doctors and patients continues to escalate." (Plaintiffs' Second Amended Complaint, at ¶ 37.) [Doc.24]

(5) A statement in Theragenics' 10–Q for the first quarter of 1998 that: "Marketing efforts along with increased awareness of prostate cancer treatment options have contributed to the continued sales acceleration." (Plaintiffs' Second Amended Complaint, at ¶ 38.) [Doc.24]

(6) A June 1998 Company press release that stated: "Receiving our CE Mark and shipping our first order to Europe is another step forward in the evolution of

---

1. Defendants contend that there are only nine statements. (Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint, at 6 n. 3.) [Doc. 28] The Court, however, includes as the tenth statement the January 11, 1999, press release and conference call.

Theragenics. This is just one example of why the Company's agreement with Indigo is so powerful." (Plaintiffs' Second Amended Complaint, at ¶ 39.) [Doc.24]

(7) A July 1998 Company press release announcing record second quarter revenues and stating that the Company's expanded manufacturing capacity would allow it to "meet the continued demand for TheraSeed®." (Plaintiffs' Second Amended Complaint, at ¶ 41.) [Doc.24]

(8) A statement from Theragenics' 10–Q for the second quarter of 1998 that the Company's increased revenues were attributable to increased production volume and "increased patient awareness of TheraSeed® procedure." (Plaintiffs' Second Amended Complaint, at ¶ 42.) [Doc.24]

(9) An October 1998 Company press release announcing record revenues for the third quarter of 1998 and stating that the Company's increased manufacturing capacity would "allow [Theragenics] to offer more cancer patients the opportunity to take advantage of the TheraSeed® treatment." (Plaintiffs' Second Amended Complaint, at ¶ 43.) [Doc.24]

(10) The Company's January 11, 1999, press release regarding its disappointing fourth quarter 1998 earnings and a conference call Defendants Jacobs and Smith held later that day with securities analysts. In both the press release and the conference call, Theragenics blamed the disappointing earnings on misallocation of resources by Indigo and stated that Indigo was adjusting its marketing and sales focus. (Plaintiffs' Second Amended Complaint, at ¶ 45, 46.) [Doc.24]

According to Plaintiffs, these allegedly false statements and omissions inflated the value of Theragenics stock in violation of the Securities Exchange Act of 1934 and injured Plaintiffs as purchasers of Theragenics stock at the artificially inflated prices.

Defendants moved to dismiss the case in its entirety for failure to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6). Defendants contended that Plaintiffs' Amended Complaint failed to comply with the heightened pleading standards of the Private Securities Litigation Reform Act of 1995, Pub.L. No. 104–67, 109 Stat. 743 (1995) (codified at 15 U.S.C. § 78u–4(b)). After careful review, the Court granted Defendants' motion. The Court allowed Plaintiffs leave to amend the Complaint within 30 days. Plaintiffs did so, and Defendants have now filed a Motion to Dismiss the Second Amended Complaint for failure to remedy the defects identified in the earlier Order as well as grounds asserted in the earlier Motion to Dismiss.

## II. MOTION TO DISMISS STANDARD

In general, a complaint should be dismissed under Rule 12(b)(6) only where it appears beyond doubt that no set of facts could support the plaintiff's claims for relief. Fed.R.Civ.P. 12(b)(6); *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Linder v. Portocarrero,* 963 F.2d 332, 334 (11th Cir.1992). In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff. *Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp., S.A.,* 711 F.2d 989, 994–95 (11th Cir.1983). Notice pleading is all that is required for a valid complaint. *Lombard's, Inc. v. Prince Mfg., Inc.,* 753 F.2d 974, 975 (11th Cir.1985). Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. *Id.*

## III. DISCUSSION

■ Section 10(b) of the Securities Exchange Act of 1934 [hereinafter "Section 10(b)"] prohibits any person from using, in connection with the sale of any security, any deceptive device in contravention of such rules and regulations as the Securities and Exchange Commission ("SEC") may prescribe. 15 U.S.C. § 78j(b). Based on this statute, the SEC has promulgated 17 C.F.R. § 240.10b–5 [hereinafter "Rule 10b–5"] to prohibit the making of any untrue statement or omission of material fact that would render statements misleading in connection with the purchase or sale of any security. To state a securities fraud claim under Rule 10b–5, a plaintiff must allege that the defendant (a) made a misstatement or omission, (b) of material fact, (c) with scienter, (d) in connection with the purchase or sale of securities, (e) upon which the plaintiff relied, (f) that proximately caused the plaintiff's injury. *Bryant v. Avado Brands, Inc.,* 187 F.3d 1271, 1281 (11th Cir.1999); *Robbins v. Koger Properties, Inc.,* 116 F.3d 1441, 1447 (11th Cir.1997); *Bruschi v. Brown,* 876 F.2d 1526, 1528 (11th Cir.1989); *Sturm v. Marriott Marquis Corp.,* 26 F.Supp.2d 1358, 1364–65 (N.D.Ga.1998).

Defendants in their original Motion to Dismiss contended that the Court should dismiss Plaintiffs' suit because: (1) Plain-tiffs failed to plead fraud with sufficient particularity; (2) Plaintiffs failed to allege with particularity the facts that support their "information and belief" allegations; (3) Plaintiffs may not rely on the group pleading doctrine; (4) the alleged omissions on which Plaintiffs relied are protected forward-looking statements or are otherwise immaterial as a matter of law; (5) Plaintiffs failed to allege facts that would establish a strong inference that Defendants acted with scienter; and (6) Plaintiffs failed to allege adequately that Defendants Jacobs and Smith are subject to "controlling person" liability. The Court agreed with Defendants on the second and fifth contentions and granted the Motion to Dismiss Plaintiffs' First Amended Complaint.

■ In their Motion to Dismiss the Second Amended Complaint, Defendants renew their second, fourth, fifth and sixth arguments. For the reasons stated in its July 20, 2000, Order, the Court cannot conclude that the alleged omissions on which Plaintiffs relied are protected forward-looking statements or otherwise immaterial as a matter of law or that Plaintiffs have failed to allege adequately that Defendants Jacobs and Smith are subject to "controlling person liability."[2] As for the second and fourth arguments—failure to plead "information and belief" allega-

**2.** The Court concluded in its July 20, 2000, Order that, pursuant to *Brown v. Enstar Group, Inc.,* 84 F.3d 393, 396 (11th Cir.1996), "Plaintiffs have adequately alleged controlling person liability as to the individual Defendants, Jacobs and Smith." *In re Theragenics Corp. Sec. Litig.,* 105 F.Supp.2d 1342, 1362 (N.D.Ga.2000). The Court also concluded on the issues of forward-looking statements and materiality that "this Court would not conclude as a matter of law that the alleged statements and omissions regarding Theragenics' revenues and earnings were clearly unimportant to the average investor. As for whether the statements were forward-looking or are protected by the bespeaks caution doc-trine, the Court cannot hold at this stage of the litigation that no set of facts would support the Plaintiffs' claims for relief." *Id.* at 1359. In ruling on a Rule 12(b)(6) motion, even following enactment of the Private Securities Litigation Reform Act, a court must accept the allegations in the complaint as true and construe them in the light most favorable to the plaintiff. The Court will revisit these issues if Defendants, following discovery, can show that insufficient factual support exists and summary judgment consequently is warranted on these grounds. *See In re Miller Indus., Inc. Sec. Litig.,* 120 F.Supp.2d 1371, 1378, 1381 (N.D.Ga.2000).

tions with particularity and failure to allege facts raising a strong inference of scienter—the Court will address these in more detail.

## A. FALSE STATEMENTS OR OMISSIONS BASED ON "INFORMATION AND BELIEF"

■ Defendants contend that Plaintiffs have failed to plead the existence of false statements or omissions adequately, as required by Fed.R.Civ.P. 9(b) and the Private Securities Litigation Reform Act of 1995 [hereinafter "the Reform Act"], Pub.L. No. 104–67, 109 Stat. 743 (1995) (codified at 15 U.S.C. § 78u–4(b)). The Reform Act provides that "if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u–4(b)(1). Defendants argue that Plaintiffs have failed to satisfy this heightened pleading standard regarding Plaintiffs' allegations that the 1998 revenue increases were temporary and that Defendants directed Indigo to curtail its sales efforts. According to Defendants, these allegations are based only on Plaintiffs' information and belief.

As the Court explained in its July 20, 2000, Order, courts implementing the Reform Act have differed in their interpretations of what constitutes sufficient factual support for "information and belief" pleading. This conflict among the federal courts has arisen in large part because of differing interpretations ˙of the Reform Act's legislative history. Because the Eleventh Circuit has not addressed the issue of what constitutes sufficient factual support to satisfy the information and belief pleading requirement, this Court extensively reviewed other federal courts' interpretations of information and belief pleading as it existed pursuant to Fed. R.Civ.P. 9(b) prior to the Reform Act's enactment, the legislative history of the

Reform Act, and more than 50 federal court decisions interpreting the Reform Act's information and belief pleading requirements. The Court concluded that to satisfy the Reform Act, securities plaintiffs must disclose the basis for their belief that the defendants' statements were false. In practice, this pleading requirement may be satisfied by references to internal memoranda or other documents, press releases, news articles and government-mandated filings. A plaintiff at this stage of the litigation, however, need not provide the names of either corporate whistle-blowers, customers of the defendant, or even outside consultants who provided factual support for the allegations, provided that there are other facts that provide an adequate basis for believing that the defendants' statements were false. If there are no other sources of information, it is enough that the plaintiff cite human sources without providing their names, provided that enough information is given to assure the Court that the plaintiff is not seeking to use discovery merely as a fishing expedition in the hope that something will turn up.

The Court agreed with the holding of the Second Circuit in its recent *Novak* decision:

> In our view, notwithstanding the use of the word "all," paragraph (b)(1) does not require that plaintiffs plead with particularity every single fact upon which their beliefs concerning false or misleading statements are based. Rather, plaintiffs need only plead with particularity sufficient facts to support those beliefs. Accordingly, where plaintiffs rely on confidential personal sources but also on other facts, they need not name their sources as long as the latter facts provide an adequate basis for believing that the defendants' statements were false. Moreover, even if personal sources must be identified, there is no

requirement that they be named, provided they are described in the complaint with sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged. In both of these situations, the plaintiffs will have pleaded enough facts to support their belief, even though some arguably relevant facts have been left out.

*Novak v. Kasaks,* 216 F.3d 300, 313 (2d Cir.2000).

This disclosure requirement serves two purposes. First, it assures the court that the plaintiffs have sufficient factual basis for their claims to justify the burden to the defendant and third parties of going forward with discovery. Second, it gets a commitment from the plaintiffs as to the sources of their information and belief that can be tested at the summary judgment stage of the litigation. *See* 15 U.S.C. § 78u–4(b)(3)(B) ("In any private action arising under this title, all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss, unless the court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party."); *see also* Harold S. Bloomenthal, *Securities Law Handbook* § 30.06[1] (2001) ("On the one hand the PSLRA imposes specificity requirements relating to the defendant's state of mind in private fraud actions brought under the Exchange Act. On the other hand, the Act severely limits plaintiff's ability to discover facts relating to the defendant's state of mind, facts often peculiarly within the control of the defendant."). Having determined the proper standard for information and belief pleading pursuant to the Reform Act, the Court then applied that standard to the facts of this case. The Court noted that Plaintiffs had failed to provide a sufficient factual basis for two allegations: (1) that Amersham encountered severe manufacturing

shortages and these shortages were the reason medical professionals were switching to TheraSeed®; and (2) that Theragenics ordered Indigo to curtail its sales efforts. As to the first, the Court stated:

Did they learn it from doctors who switched from Iodine–125 to TheraSeed® because they were put on a waiting list for Iodine–125? Did they learn it from salespersons for Amersham or other medical supply companies? Did they learn it from patients whose doctors told them they were implanting with TheraSeed® because Iodine–125 was scarce? Did they read it in the newspaper articles or a securities filing made by Amersham? This type of factual support is required for Plaintiffs to withstand Defendants' Motion to Dismiss.

*In re Theragenics Corp. Sec. Litig.,* 105 F.Supp.2d 1342, 1356 (N.D.Ga.2000).

Plaintiffs have attempted to provide the required basis in their Second Amended Complaint by stating that they obtained the information from "numerous medical doctors in the field." (Second Amended Complaint, at ¶ 20.) [Doc. 24] Plaintiffs additionally state that they learned of the Amersham shortages from communications with former Amersham employees and a March 30, 1998, letter sent to customers by Amersham's President Daniel L. Peters. (Second Amended Complaint, at ¶ 21.) [Doc. 24] Defendants challenge the sufficiency of these factual bases on grounds that Plaintiffs have failed to specify the exact number of medical·professionals who provided information to them and what sales volume can be attributed to them. Without such information, Defendants contend that Plaintiffs cannot show "what Defendants supposedly learned." (Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint, at 9.) [Doc. 28] The Court, however, must disagree

with Defendants' argument. The additional information may be obtained through discovery, but is not required to be included in the Complaint. By stating the sources of their information and belief, Plaintiffs have satisfied the Reform Act's requirements for this allegation.

In concluding that Plaintiffs originally had failed to show the factual basis for their belief that Theragenics ordered Indigo to curtail its sales efforts, the Court stated that "Plaintiffs need to provide the Court with either the sources from which or whom they acquired this information, or the reasons why they believe the allegation is true." *Theragenics,* 105 F.Supp.2d at 1357. Plaintiffs now state that the source for this allegation is Theragenics' Director of Investor Relations, Ronald A. Warren. According to Plaintiffs, Warren admitted privately to certain investors on February 19, 1999, that Defendants had instructed Indigo to reduce its direct marketing efforts to avoid over-demand of TheraSeed® while Amersham experienced shortages. (Second Amended Complaint, at ¶¶ 28, 32.) [Doc. 24] Defendants do not address in their Motion to Dismiss or their Reply Brief the sufficiency of this factual basis. The Court concludes that by naming Warren as the source, Plaintiffs have provided a factual basis for their belief that Defendants directed Indigo to curtail marketing efforts while Amersham experienced shortages.

## B. SCIENTER

■ Defendants also contend that Plaintiffs have failed to satisfy the Reform Act's requirements for pleading scienter. A plaintiff must properly allege scienter to state a claim pursuant to Section 10(b) and Rule 10b–5. The Supreme Court has defined scienter as "a mental state embracing intent to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 194, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976). Before the enactment of the Reform Act, the law in the Eleventh Circuit was clear that there was not a special pleading standard for securities fraud cases, and that "a showing of 'severe recklessness' satisfies the scienter requirement." *McDonald v. Alan Bush Brokerage Co.,* 863 F.2d 809, 814 (11th Cir.1989). The Eleventh Circuit defined "severe recklessness" as follows:

> Severe recklessness is limited to those highly unreasonable omissions or misrepresentations that involve not merely simple or even excusable negligence, but an extreme departure from the standards of ordinary care, and that present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it.

*Id.* (quoting *Broad v. Rockwell Int'l Corp.,* 642 F.2d 929, 961 (5th Cir.1981) (en banc)).

The Reform Act includes a provision that for each allegedly false statement or omission, a plaintiff must provide particular facts that create "a strong inference that the defendants acted with the required state of mind." 15 U.S.C. 78u–4(b)(2). The application of this provision has produced considerable debate as to whether the Reform Act's heightened pleading standards also raised the required level of scienter in securities fraud cases. *See e.g., In re Silicon Graphics, Inc. Sec. Litig.,* 183 F.3d 970, 975 (9th Cir.1999) (adopting stringent requirement that plaintiffs must allege facts that give rise to strong inference of deliberate recklessness), *aff'g,* 970 F.Supp. 746, 757 (N.D.Cal.1997); *In re Comshare, Inc. Sec. Litig.,* 183 F.3d 542, 549 (6th Cir.1999) (taking middle course by allowing plaintiffs to plead facts that give rise to a strong inference of recklessness, but rejecting that motive and opportunity alone are sufficient); *In re Advanta Corp. Sec. Litig.,* 180 F.3d 525, 534–35 (3d Cir.1999) (allow-

ing plaintiffs to show motive or opportunity to commit fraud or circumstantial evidence that denotes either recklessness or conscious misbehavior); *Press v. Chemical Inv. Servs. Corp.,* 166 F.3d 529, 537–38 (2d Cir.1999) (same); *In re Stratosphere Corp. Sec. Litig.,* 1 F.Supp.2d 1096, 1107 (D.Nev. 1998) (continuing to allow plaintiffs to plead facts showing strong circumstantial evidence of reckless behavior); *In re Baesa Sec. Litig.,* 969 F.Supp. 238, 240–42 (S.D.N.Y.1997) (continuing to allow plaintiffs to plead facts showing strong circumstantial evidence of reckless behavior); *Fugman v. Aprogenex, Inc.,* 961 F.Supp. 1190, 1195 (N.D.Ill.1997) (requiring heightened pleading but allowing state of mind to be shown by motive and opportunity); *Norwood Venture Corp. v. Converse, Inc.,* 959 F.Supp. 205, 208 (S.D.N.Y.1997) (requiring a strong inference of knowing or intentional misconduct by defendants); *Marksman Partners, L.P. v. Chantal Pharm. Corp.,* 927 F.Supp. 1297, 1311 (C.D.Cal.1996) (requiring heightened pleading but allowing state of mind to be shown by motive and opportunity).

 Fortunately, this debate was resolved for district courts in the Eleventh Circuit when the Court of Appeals held that the Reform Act does raise the pleading standard, in that a plaintiff must set forth particularly those facts that create a strong inference that the defendant acted with the required state of mind, but the Reform Act does not change the required state of mind itself. *Bryant v. Avado Brands, Inc.,* 187 F.3d 1271, 1283 (11th Cir.1999). Therefore, in the Eleventh Circuit, a strong inference of severe recklessness remains the standard by which a plaintiff may satisfy the scienter requirement. *Id.* at 1283. Although motive and opportunity may be evidence that, along with other evidence, might contribute to an inference of willfulness or recklessness, they alone do not suffice to create the required strong inference. *Id.* at 1285–86.

In this case, the Court in reviewing the original Amended Complaint found that Plaintiffs failed to allege facts that create a strong inference that Defendants intentionally or recklessly misrepresented the facts contributing to the temporary increase in demand for TheraSeed®. The Court noted that "with the exception of Defendants Jacobs' and Smith's stock trades during the class period, Plaintiffs have provided no factual support whatsoever for their allegations that Defendants acted with the required state of mind" and that "stock sales during the class period are insufficient by themselves to show scienter in this case." *In re Theragenics Corp. Sec. Litig.,* 105 F.Supp.2d 1342, 1360–1361 (N.D.Ga.2000). Now in reviewing Plaintiffs' Second Amended Complaint, the Court concludes that Plaintiffs have adequately alleged facts that create the requisite strong inference of scienter for the alleged misrepresentations.

Plaintiffs base their scienter claim on three allegations. First, Plaintiffs claim that Theragenics closely and continually monitored the performance of Amersham, its largest competitor. They were aware of the March 20, 1998, letter in which Amersham informed customers of the Iodine 125 shortage. (Plaintiffs' Second Amended Complaint, ¶¶ 23.) [Doc.24] Second, Plaintiffs claim that Ronald Warren privately admitted to certain Theragenics investors after the end of the class period that Amersham had suffered a backlog, that this backlog had increased demand for TheraSeed®, and that the increased demand had forced Theragenics to instruct Indigo to reduce its direct marketing efforts. (Plaintiffs' Second Amended Complaint, ¶¶ 22, 32.) [Doc.24] Third, Plaintiffs claim that doctors who ordered TheraSeed® informed Theragenics' sales force and Indigo that the temporary shortage of Iodine–125 was the reason for their

increased orders. (Plaintiffs' Second Amended Complaint, ¶ 23.) [Doc.24]

If Defendants knew that the increase in demand for TheraSeed® was caused by shortages of a competing product, there is a permissible inference of severe recklessness with respect to the public statements made by the Defendants during the class period. Defendants contend that Plaintiffs' case is no more than "fraud by hindsight." "Fraud by hindsight" is a phrase coined by Judge Friendly to describe claims where defendants after a change in conditions realize, "Oops, maybe we were mistaken," but that does not constitute actual fraud. *See Denny v. Barber*, 576 F.2d 465, 470 (2d Cir.1978) ("In sum, the complaint is an example of alleging fraud by hindsight. For the most part, plaintiff has simply seized upon disclosures made in later annual reports and alleged that they should have been made in earlier ones."). In the Second Amended Complaint, the Plaintiffs have alleged more than fraud by hindsight. They allege that Theragenic's sales force was told by doctors ordering TheraSeed® that their orders were the result of an inability to obtain the competitor's product. They also allege that Defendants intentionally instructed Indigo to reduce its marketing efforts. If these allegations are true, failure to disclose the reasons for the increased demand for TheraSeed® and the likelihood of reduced future demand was, at the least, sufficiently lacking in prudence or caution as to constitute severe recklessness. At this stage of the litigation, Plaintiffs have alleged sufficient facts showing knowledge on the part of Defendants to justify proceeding with discovery. Of course, the issue may be revisited after discovery at the summary judgment stage.

## IV. CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint [Doc. 28] is DENIED.